## KLINE et al. v. UNITED STATES et al.
### Civ. No. 234.

District Court, D. Nebraska, Omaha Division.

Oct. 24, 1941.

Lawrence W. Moore, of Omaha, Neb., for petitioner.

S. R. Brittingham, Sp. Asst. Atty. Gen., for United States.

Allen Crenshaw, of Washington, D. C., for Interstate Commerce Commission.

Before WOODROUGH, Circuit Judge, and DONOHOE and SULLIVAN, District Judges.

PER CURIAM.

This is a statutory suit, 28 U.S.C.A., §§ 45, 47, to set aside and permanently enjoin an order entered by the Interstate Commerce Commission on December 7, 1940, in a proceeding before it, wherein petitioner was the applicant, entitled, to-wit: "No.MC–42246, Ray C. Kline Common Carrier Application". Interlocutory injunction has been applied for. At the hearing upon the application for interlocutory injunction the evidence heard before the Commission has been introduced, and the case has been submitted for final decree.

The petitioner in his complaint alleges that he was, on June 1, 1935, prior thereto, and continuously thereafter, a carrier by motor vehicle, transporting goods in interstate commerce for the general public; that he is and was entitled to have issued to him under the provisions of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a), a certificate of public convenience and necessity, authorizing him to continue his operations as a motor carrier. His original application under the Act was filed on February 8, 1936. This application was amended on February 28, 1938, and as amended asked for a certificate of public convenience and necessity to continue his operations as a common carrier. Thereafter, at a hearing on December 7, 1940, the Commission made and entered an order and report in the premises; that said report and order of the Commission found and concluded that the petitioner failed to show that he was a common carrier on June 1, 1935, as the same is defined by the Motor Carrier Act of 1935, and that since said date he has continued his operations as a motor carrier. His application was denied, and the petitioner now prays that the order of the Commission denying his application be set aside and annulled.

It is the contention of the petitioner (1) that the order deprives petitioner of his property without, and denies him, due process of law, in that the order of the Commission is based upon matters foreign and outside the record; (2) that the findings of the Commission are not supported by substantial evidence; (3) that the order and ultimate conclusion of the Commission is not supported by facts, or the primary facts as found by the Commission; (4) that the order is contrary to the law and the facts.

The defendants, in their answers, admit that the petitioner applied to the Commission for a certificate of convenience and necessity, that hearings were held, evidence taken in the matter of said application, and that the Commission made an order denying petitioner's application. The defendants deny that the findings of the Commission are based on extraneous matter and aver that the findings and determination of the Commission are based upon evidence taken at the hearing.

Section 206(a) of the Motor Carrier Act, 1935, provides that no common carrier by motor vehicle shall engage in interstate or foreign commerce without a certificate of convenience and necessity issued by the Commission; it is also provided in said section that if any such carrier was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, and continued said operation since that time, the Commission should issue such certificate without requiring further proof of public

necessity or convenience. This last referred to provision is known as the "grandfather clause".

The petitioner applied to the Commission under the so-called "grandfather clause" of the Act for a certificate of convenience and necessity permitting him to continue his operations as a common carrier by motor vehicle of property generally from, to and between, via certain routes, Chicago, Illinois; Omaha, Nebraska; Denver, Pueblo and Trinidad, Colorado; and points intermediate thereto. The applicant was given a hearing on his application. After such hearing, the application was denied as an application for a rehearing.

The facts shown by the record may be summarized as follows: That the petitioner commenced the operation of selling and providing transportation to shippers on February 1, 1934, and was so engaged on June 1, 1935, and continued such operations down to the date of the hearing of his application. The applicant, during said period, owned no motor or trucking equipment excepting an interest in one truck (Nagel Truck). That the equipment used in his operations was hired or leased from so-called owner-operators, either for a single one-way trip, or a round trip, depending upon whether or not the petitioner had a return load of freight from the destination of the first load. The compensation of the owner-operator depended upon whether he had a full load to and from the destination. There was no leasing of equipment except for the particular trip, and as hereinafter stated. The applicant solicited business and issued way-bills covering the cargo. He carried trip insurance on each load. Two of the larger shippers using the facilities of his operation carried their own cargo insurance. The fact that they did so carry their own cargo insurance was considered in fixing the charge of the transportation. Where the shipper carried his own cargo insurance, charge for carriage was reduced proportionately. Many of the driver-operators carried no insurance. If the driver-operator received at the origin of the shipment less than a truck-load lot from the petitioner he sometimes solicited, and in instances obtained as a result thereof, other merchandise for transportation. The method of operation of petitioner was to first procure the shipment for transportation over petitioner's line, and then to make arrangements with an owner-operator for his transportation. There was no continuity in the service rendered by any owner-operator. A separate deal was made for each load. There was no duty resting upon the applicant to give any driver other loads for transportation, nor was the owner-operator required to receive from the applicant other loads. None of the owner-operators served the petitioner exclusively. Some of the owner-operators were used by the petitioner for only one or two trips.

An abstract of shipments (Exhibit 2, Tr. 19) covering seventeen months of operation immediately prior to June 30, 1935, shows the applicant lists 256 shipments which were handled by 83 different drivers for an average of approximately three loads per driver. This abstract shows also that 46 drivers had only one load. The highest number of loads for one driver is nineteen. In May, 1935, 26 shipments were handled by nineteen different drivers. In some states through which petitioner carried on his operations, permits were either unnecessary or were not obtained, and in some states the permits of the owner-operators were used. In Iowa an operating permit was issued in the name of Harris and Kline. Harris was one of the owner-operators employed on occasion by the applicant. In Colorado the permit was issued to an owner-operator, Claude E. Harris, and this permit was used by others employed by the applicant, while an owner-operator by the name of Cotton had his own permit for the State of Colorado, although when Cotton took a load into Colorado for the applicant, he operated under the permit of the applicant, and not on his own. The wheelage tax required by the law of Colorado was paid by the applicant at the end of each month. Claude E. Harris, Cotton and Rogers, were owners and operators who, on occasion, had been employed by the applicant in connection with his operations, made their individual applications to the Commission for authority to operate as common carriers by motor vehicle under the "grandfather clause" of the Motor Carrier Act. The owner-operators, while engaged in transporting merchandise under the petitioner's bills of lading, were subject to the direction of the applicant as to the origin and destination of the shipment which they carried. However, they paid the expenses incurred on the haul, as well as their personal expenses, and if the equipment was not being operated by the owner-operator, he, and

not the petitioner, selected the drivers. The applicant contracted with the shippers to effect the transportation. Shipments were transported under bills of lading issued by the petitioner, and on many of the pieces of equipment the name "Independent Truckers Association" was printed.

The predecessor of petitioner was a member of, and registered under the National Industrial Recovery Act and the code of fair competition for the trucking industry for the State of Nebraska, prior to June 1, 1935.

The petitioner contends that he was not accorded that fair hearing which the Constitution and applicable Act makes mandatory, and further, that the Commission based its findings on evidence not legally before it. He bases this contention on the following: "Our records show that Harry Cotton filed an application on May 3, 1937, for authority to continue an operation claimed to have been conducted since prior to June 1, 1935, as a common carrier by motor vehicle * * * between points involved herein, which application is now pending."

Further: "He stated that Claude E. Harris at one time leased motor vehicles to him. * * * Our records show that on December 17, 1938, this division authorized Claude E. Harris to continue an operation as a common carrier by motor vehicle, in interstate or foreign commerce, of certain commodities between various points involved in this application, over irregular routes."

Further: "The person [Harris], in whose name the Colorado authority was issued and who appears to have been joint holder of the Iowa permit, has received authority from us to continue the transportation of commodities between points involved in this application, as a result of a 'grandfather' application seasonably filed, while at least one other person [Cotton], whose vehicles were used by applicant, has an application now pending before us, based upon similar operations stated to have been conducted by him prior to June 1, 1935."

Cotton testified before the Examiner for the Commission at the hearing upon petitioner's application in substance as follows: That when he first started operations in the motor trucking business in March, 1934, the predecessor of the petitioner made all arrangements for him with the shippers, and later the petitioner made such arrange-

ments; that he held a Colorado permit to operate; that when he carried shipments for petitioner he operated on petitioner's permit, and the petitioner paid a road tax required by the laws of the State of Colorado. If he carried a shipment secured through his own efforts or if he operated in Colorado under his own permit when carrying the petitioner's shipments, he had a card in the window of the cab of his truck with the name, "Independent Truckers Association" thereon. In the spring of 1935, prior to June 1, 1935, while Cotton continued to do some hauling for the petitioner he was also hauling shipments in his own name, making his own arrangements and not accounting to the petitioner for any of the revenue derived therefrom; that he made application for a certificate so that he might operate under the "grandfather" rights; that he later sold his operating rights and has since confined his operations to the hauling of livestock.

The petitioner testified before the Examiner that he had leases for six months on trucks operating in Colorado, in compliance with a law of that State which required leases to be for six months or more. No testimony was given by him or any other witness as to whom the six months leases were with. Petitioner also testified that Claude E. Harris "has a compliance order". The compliance order is temporary evidence of "grandfather" authority issued to an applicant on the basis of the statements made in his application.

Cotton testified that shipments he carried for petitioner and his predecessor were from Omaha to Denver, Nebraska City to Denver, and intermediate points between said termini.

Referring to the findings quoted hereinbefore with respect to Harry Cotton, it is stated that the records show operations by Cotton upon which he based authority to continue his operations "between points involved herein". As to Claude E. Harris the findings show an operation by him "between various points involved in this application over irregular routes". Then in the third of the quoted findings we find this language: "based upon similar operations stated to have been conducted by him prior to June 1, 1935"; this is in reference to Cotton's operation. The only testimony received by the Examiner with reference to Harris' operation is that given by the petitioner, who stated that Harris

582

"has a compliance order". The records in the matter of the applications filed by Harris and Cotton with the Commission were not introduced or received in evidence at the hearing before the Examiner. The petitioner urges that this is error affecting the substantial rights of the applicant.

■ The general rule of law is that nothing can be treated as evidence that is not introduced as such. Interstate Commerce Commission v. Louisville & Nashville Railroad Company, 227 U.S. 88, 91, 93, 33 S.Ct. 185, 57 L.Ed. 431.

■ The defendants contend that the improper mode of stating a fact, which fact is supported in substance by the evidence, cannot be regarded as error affecting the substantial rights of the parties, that the mode of expression of a fact is immaterial. With that statement we do not disagree, but the question here is, do the facts attempted to be stated in the three findings complained of appear in substance in the transcript of testimony taken at the hearing. The Court has carefully examined the transcript and is unable to find that in the testimony of Cotton or the petitioner there is any evidence as to the routes over which Cotton and Harris operated as common carriers by motor vehicle. These two men were owner-operators, at times employed by the petitioner and at other times hauling shipments on their own account. As to what routes Cotton and Harris used in their individual operations is not disclosed by the evidence. What operations of Cotton and Harris were used as a basis for the permits of certificates issued to them is not disclosed in the record, save and except that each of the men operated in the State of Colorado.

The Court can come to no other conclusion but that the foregoing three quoted findings of the Commission are without basis in the evidence received at the hearing before the Examiner.

■ Here the petitioner invokes the "grandfather clause" as the basis for his right to a certificate. To be entitled to a certificate under that clause he must show that "he was in bona fide operation as a common carrier on June 1, 1935". In determining whether or not petitioner is entitled to a permit under the "grandfather clause" Section 203(a) (14) must be read in connection with Section 206(a). The provision of Section 206(a) that no motor carrier "shall engage in any interstate * * * operation on any public highway" without a certificate "indicates that indirect operations of forwarders through independent carriers are not within the scope of the Act. It can hardly be said that a forwarding company is engaged in 'operation' on a 'public highway' when it contracts for transportation thereon by independent connecting carriers." Acme Fast Freight, Inc., et al. v. United States et al., D.C., 30 F.Supp. 968, 972.

■ The elements making up petitioner's holding himself out to the public as a common carrier were matters for consideration and determination by the Commission, based on evidence received at the hearing. A mere "holding out" is not sufficient to qualify petitioner under the "grandfather clause". Other elements as disclosed by the evidence must be taken into consideration to ascertain whether, at the crucial time, he was in bona fide operation, such as the regularity and extent of his operations, the equipment in use, whether owned or leased, the control over drivers and equipment, the relationship existing between him and the owner-operators, the lawfulness of his operation in the different states and his responsibility to the shippers.

In Loving et al. v. United States et al., D. C., 32 F.Supp. 464, at page 467, affirmed in 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387, the Court had this to say: "We cannot agree with plaintiffs that for the purpose of construing the Act involved, the actual status of a common carrier arises in accordance with his public offer and begins immediately when such a carrier accepts any shipment within the scope of his public offer. The cases relied upon, to the effect that if a carrier hold himself out to the public to carry for hire he is a common carrier, and must fulfill his obligations to the public as such, are not controlling in construing the instant Congressional Act. [Motor Carrier Act, 1935, 49 U.S.C.A. § 301 et seq.] * * * Too, we can imagine possible defeat of the purpose intended to be achieved by enactment of the particular Congressional Act, by the granting, under the 'grandfather clause', of numerous permits where there have been mere offers to perform service without in fact actual performance thereof."

■ The Commission appears to have consistently ruled that to be in bona fide

operation as a carrier by motor vehicle one must have direction and control of the vehicles which do the carrying for him "so that he is responsible both to the shipper and to the general public for their operation; * * * and * * * mere user, in the absence of control or direction, even though exclusive, is not enough." See O'Malley v. United States et al., D.C., 38 F.Supp. 1, 3, and cases cited.

█ The pivotal question in this application was, by whom was actual performance made. The rule that matter improperly treated as evidence may be an important factor in the conclusion reached by the Commission is applicable. Compare United States et al. v. Abilene & Southern Railway Co. et al., 265 U.S. 274, at page 290, 44 S.Ct. 565, 68 L.Ed. 1016. This Court cannot possibly determine that the foreign matter referred to in the report and findings of the Commission was not an important element and consideration in the Commission's decision, nor can it determine that the Commission gave no weight thereto. Compare Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 999, 82 L.Ed. 1129. Obviously a consideration of the matter set out in the first three findings must have been persuasive upon the Commission. The Court's review of the evidence is limited to the question of whether there is substantial evidence supporting the findings of the Commission. The Court is not permitted to consider the soundness of the reasoning upon which the conclusion of the Commission was reached, nor is the Court permitted to undertake an independent investigation of the record and report to ascertain whether there was any evidence upon which their order might be sustained. West v. Chesapeake & P. Telephone Co., 295 U.S. 662, 675, 55 S.Ct. 894, 79 L.Ed. 1640; Atchison, T. & S. F. R. Co. et al. v. United States et al., 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382; United States et al. v. Chicago, M., St. P. & P. R. Co. et al., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023; Ohio Bell Telephone Co. v. Public Utilities Comm. of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Interstate Commerce Comm. v. Chicago, B. & Q. R. Co., 186 U.S. 320, 22 S.Ct. 824, 46 L.Ed. 1182.

The defendants urge that the Commission may take notice of its public records. Upon the making and filing of the report, findings and conclusions of the Commission, the petitioner filed an application for further hearing, and for oral argument because of the foreign matter contained in the findings. The Commission denied this application.

█ There are instances where the Commission is required to take notice of its public records. The records in this case were applications on the part of truck operators for certificates to continue operations based on "grandfather" rights. Compliance order in the first instance was made in the Claude E. Harris case upon his statements of past operation. Just what appeared in the record with reference to the Cotton operation is not in evidence. The petitioner was deprived of his right to cross-examination, and of a testing of the truth of the statements appearing in said two applications. We think that this procedure violated the essential rights of a full and fair hearing, as the same is laid down in the rule in the case of Interstate Commerce Commission v. Louisville & Nashville Railroad Company, supra, and in violation of the procedural requirements as defined in the case of Morgan v. United States, supra. The fact that the final order of the Commission might be justified on the merits does not obviate the requirement of a fair trial. The requirement of a fair trial is binding on administrative agencies, as well as on the Courts. Morgan v. United States, supra; Ohio Bell Telephone Company v. Public Utilities Commission, supra.

The other contentions made by the plaintiff have been fully considered, but a discussion thereof is unnecessary because of the conclusion reached by the Court.

For the reasons stated, the order of the Commission will be set aside and the cause remanded to the Commission for further proceedings in accordance with this opinion.