## BOARD OF PUBLIC UTILITY COM'RS OF NEW JERSEY v. UNITED STATES et al.

### No. 5181.

District Court, D. New Jersey.

Dec. 17, 1937.

John A. Bernhard, of Newark, N. J. (John J. Hickey, of Washington, D. C., of counsel), for plaintiff.

J. Stanley Payne, Asst. Chief Counsel, of Washington, D. C. (Daniel W. Knowlton, Chief Counsel, of Washington, D. C., of counsel), for Interstate Commerce Commission.

Walter J. Larrabee, of New York City (E. H. Burgess, of New York City, Joseph F. Eshelman, of Philadelphia, Pa., Thomas P. Healy and Walter J. Larrabee, both of New York City, George P. Orlady, of Philadelphia, Pa., M. B. Pierce, of New York City, H. B. Thomas, of Rochester, N. Y., Charles R. Webber, of Baltimore, Md., William I. Woodcock, Jr., and Edwin A. Lucas, both of Philadelphia, Pa., of counsel), for intervening carriers.

Franklin L. Partridge, Jr., of Newark, N. J. (Parker McCollester and Lord, Day & Lord, all of New York City, of counsel), for intervener-defendant the Chamber of Commerce of New York.

Before DAVIS, Circuit Judge, and AVIS and FORMAN, District Judges.

FORMAN, District Judge.

Plaintiff, the Board of Public Utility Commissioners of the State of New Jersey, petitions this court to set aside, annul, and enjoin the enforcement of the order of the Interstate Commerce Commission of September 28, 1934, in docket No. 25570, entitled Intrastate Class Rates in New Jersey, 203 I.C.C. 357. Ten carriers, the New York Central Railroad Company, West Shore Railroad (The New York Central Railroad Company, lessee), Erie Railroad Company, the Delaware, Lackawanna & Western Railroad Company, Lehigh Valley Railroad Company, the Pennsylvania Railroad Company, the Central Railroad Company of New Jersey, Reading Company, Pennsylvania-Reading Seashore Lines, the Baltimore & Ohio Railroad Company, New York, Susquehanna & Western Railroad Company, Lehigh & New England Railroad Company, New York, Ontario & Western Railroad Company, the New York & Long Branch Railroad Company, and the Chamber of Commerce of the state of New York have intervened and, along with the defendants, the United States of America and Interstate Commerce Commission, contend that the order is valid.

In May of 1924 the Interstate Commerce Commission entered upon an investigation of the class rate[1] structure of official classification territory. This area embraces substantially the region east of the Mississippi and north of the Ohio and Potomac rivers, including also the New England States. The resulting final report is entitled Eastern Class-Rate Investigation, 164 I.C.C. 314. Supplemental reports are to be found at 171 I.C.C. 481 and 177 I.C.C. 156. By this order the Commission prescribed maximum reasonable class rates as the lawful standard for interstate application throughout official classification territory. In Appendix E at page 467 of 164 I.C.C. the basic scale of reasonable maximum rates is prescribed. These rates vary in accordance with the class of freight, i. e., first, second, third, etc., and the number of miles the freight is to be transported. The distance component rule is known as the finding 4 formula, and is set forth as follows: "4. We find that in computing distances for the application of the distance scales prescribed in this proceeding the shortest routes should be used over which carload traffic can be moved without transfer of lading." 164 I.C.C. 314, 394.

Plaintiff accepted this distance rule and the Appendix E scale of maximum rates. The carriers, however, went beyond this. At a hearing conducted by the plaintiff it was disclosed that the carriers proposed to establish rates in New Jersey that would be higher than the rates prescribed in accordance with Appendix E and the distance rule. In due course plaintiff issued its report and order of May 11, 1932, authorizing carriers to establish new intrastate class rates for application throughout New Jersey to be made in accordance with Appendix E and the distance rule, and it also restrained the carriers from establishing the higher rates. Subsequently, in response to the petition of the carriers, the Interstate Commerce Commission, invoking section 13 of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 13, instituted an investigation of the matter, the report of which may be found in docket No. 25570, entitled Intrastate Class Rates in New Jersey, 203 I.C.C. 357. Following that investigation the Commission promulgated its order of September 28, 1934, of which the plaintiff herein complains. The Interstate Commerce Commission denied the contention of the carriers that the state rate adjustment caused unjust discrimination against, and undue prejudice to, interstate commerce on a statewide basis, but held that rates prescribed by plaintiff board between Camden, N. J., and points as to which Camden is intermediate over short line routes, on the one hand, and points in New Jersey beyond 80 miles, including New Jersey points in the New York group, were unduly prejudicial to Philadelphia, and unduly preferential to Camden. The dispute then is confined to the intrastate class rates of the common carriers between points in counties in the northern part of New Jersey, grouped with New York City, and points in the southern part of New Jersey,

---

[1] Class rates are applicable to thousands of commodities. A commodity rate, on the other hand, is a specified rate on one commodity.

grouped with Philadelphia. The pertinent parts of the Commission's order are as follows:

"It is ordered, That the respondents herein, according as they participate in the transportation, be, and they are hereby notified and required to cease and desist, on or before December 1, 1934, from the undue prejudice and preference which, as found in said report, would result from the rates prescribed by the Board of Public Utility Commissioners of New Jersey.

"It is further ordered, That said respondents, according as they participate in the transportation, be, and they are hereby, notified and required to establish on or before December 1, 1934, upon notice to this Commission and to the general public by not less than 30 days' filing and posting in the manner prescribed in section 6 of the Interstate Commerce Act, and thereafter to maintain class rates between Camden, N. J., and points as to which Camden is intermediate over short-line routes, on the one hand, and other points in New Jersey commonly grouped with New York, N. Y., as to class rates between Philadelphia, Pa., and New York, N. Y., on the other hand, which shall not be lower than the present class rates between Philadelphia, Pa., and said points in New Jersey commonly grouped with New York, N. Y."

This order was based upon the following finding in the Eastern Class-Rate Investigation: "14. We find that maximum class rates to and from New York City and its environs should be constructed on the bases set forth in Appendix K." 164 I.C.C. 314, 445.

Turning to Appendix K of the report of that investigation, 164 I.C.C. 314, 481–483, it will be found that the basis of rates applicable to and from "New York City and its environs" depends on the territory from and to which the traffic moves. Subdivision A covers "Long-haul Rates to and From Points in Trunk-Line Territory." Philadelphia is designated as "long-haul" territory in so far as concerns the basis of rates on traffic to and from "New York and its environs." The application of this rule was projected inland to embrace points within seven counties in Northern New Jersey; namely, Hudson, Bergen, Passaic, Morris, Essex, Union, and Middlesex.

Between this portion of New Jersey and points in trunk line territory, including

Philadelphia, the long haul class rates are "based on distances 10 miles over the distance" to certain specified rail termini in New Jersey. The distance to each of these rail termini is determined by the finding 4 formula, supra, and to this is added the ten miles for delivery to any station in the New York group.

The order of the Commission was also based upon finding 16, 164 I.C.C. 314, 448, which prescribes a specific basis for constructing rates between the Philadelphia group "as defined in respondents' proposals" and points in trunk line territory and New England for distances greater than 80 miles. As will appear from page 445 of the Eastern Class-Rate Investigation, supra, respondents' proposals defined the "Philadelphia group" to include Camden, N. J., in keeping with the traditional rate treatment of this industrial port area.

Briefly stated, the grouping of Camden and other points with Philadelphia, and points in the seven northern counties of New Jersey with New York City operates as follows: For the purpose of rate classification these points in Southern New Jersey and New York City are considered as one unit, respectively. By order of the Interstate Commerce Commission freight moving from Camden to any of the points within the seven counties in Northern New Jersey is treated for the purpose of rate classification as if it had traveled the distance from Philadelphia to New York City. In other words a constructive distance is applied instead of finding 4, which provides that the "shortest routes should be used over which carload traffic can be moved without transfer of lading." Then this constructive mileage would be applied to Appendix E to ascertain the charge for shipping.

Plaintiff complains of the order of the Interstate Commerce Commission in the following respects: (1) The order is invalid in that it did not emanate from a full hearing as required by section 13(4) of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 13(4). (2) It is not supported by findings of fact. (3) It is without support in the evidence. (4) It authorizes establishment of intrastate rates that are unlawful per se. (5) The imposition of the Appendix K rule on the intrastate class rate structure of New Jersey by the Commission's order was a mistake of law. (6) Lawful rate grouping will not create inflations of rates.

It is to be observed that the rules permitting the grouping of points in Southern New Jersey with Philadelphia, and the points in the Northern counties of New Jersey with New York City had been established prior to the order of the Interstate Commerce Commission of which the plaintiff complains. That order merely applied the existing rules. In the Eastern Class-Rate Investigation, supra, the Commission authorized carriers to maintain reasonable groupings of points of origin and destination in order that the strict application of the distance scale should not result in dividing communities which were social or economic units. The Commission therein made definite findings with respect to the communities surrounding New York Harbor. The basis of these groupings was set forth in finding No. 14, supra, and Appendix K, supra, to the Commission's report. The Commission also determined that Philadelphia and Camden should be grouped and by its finding No. 16, supra, specified how the rates for the group as a whole should be determined.

At the time the Commission made its final determination in the Eastern Class-Rate Investigation, supra, there were pending before it the complaints of the state of New Jersey and of various New Jersey communities and commercial organizations embraced in the so-called Lighterage Cases, 203 I.C.C. 481. In these cases the grouping of points in Northern New Jersey with New York City was considered, and, in so far as that grouping is applicable to this case, it was considered reasonable. [1]

■ The last three objections will be disposed of first. These contentions are a renewed effort to retry the question as to the long haul New York group settled by the Commission in the Eastern Class-Rate Investigation. They pertain solely to the propriety of including points in Southern New Jersey with the Philadelphia group and points in Northern New Jersey with the New York group. This plaintiff seeks to challenge collaterally, after having taken no steps to challenge directly, the findings in the Eastern Class-Rate Investigation and the adjudication in the Lighterage cases, which, of course, cannot be done.

■ The objection that a full hearing was denied is based on the Commission's refusal to consider the merit or lawfulness of the use of the two special terminal rules, the Appendix K rule, supra, and the Finding 16 rule, supra, in making the intrastate class rates. Testimony relating to the propriety of imposing the two special terminal rules upon the intrastate class rate structure was excluded on the grounds that these rules were not in issue. ·If plaintiff has had a hearing on these points this court will not now reconsider them.

The court finds that the plaintiff has had a hearing in so far as the two special terminal rules are concerned. Plaintiff was a party in both the Eastern Class-Rate Investigation and the Lighterage Cases. The very contentions it is now making were or should have been made in those cases. This, then, is also in the nature of a collateral attack. In Georgia Public Service Commission v. United States, 283 U.S. 765, 51 S.Ct. 619, 75 L. Ed. 1397, there was a controversy concerning the rates on chert, clay, sand, and gravel. The Commission in its original report prescribed certain distance scales as a maximum reasonable basis for interstate single line and joint line rates between points in Georgia and points in various other states. The Commission also found there was no reason for the maintenance of a different basis of intrastate rates within Georgia. It refrained, however, from entering an order hoping that the Georgia Commission would co-operate in authorizing such revisions as might be necessary to harmonize the state and interstate adjustment. The carriers then applied to the Georgia Commission for leave to establish the same distance scales for intrastate traffic, but their application was refused and the State Commission directed the establishment of a scale differing from that applicable to interstate hauls. Thereupon the carriers appealed to the Interstate Commerce Commission which reopened the interstate proceeding, and a supplemental hearing followed, as a result of which the Interstate Commerce Commission found the state rates prejudicial to the interstate rates. It was there contended, just as it is here, that plaintiffs had been denied a "full hearing" because the Interstate Commerce Commission restricted the supplemental hearing to the question of prejudice and discrimination, and refused to consider anew the question of the reasonableness of the interstate scales. The Supreme Court held that consideration of the question of reasonableness at the earlier hearing was sufficient, pointing out that at such earlier hearings the

548

Georgia Commission and its Highway Board were represented. It appears, therefore, that if the Commission in an "earlier stage of the proceeding" has already passed on the issue as to whether the interstate rates (and rate-making rules) are reasonable, then it is unnecessary to renew consideration thereof in a subsequent section 13 proceeding.

█ █ It follows that the Commission was under no duty to reconsider the reasonableness of the interstate rate-making rules. The only issue before the Commission was whether the rates prescribed by the Plaintiff were prejudicial to interstate commerce. This brings us to Plaintiff's contentions that there were insufficient findings and insufficient evidence to support the order of September 28, 1934.

Plaintiff complains that there are neither findings nor evidence to support the application of Appendix K, supra, and finding 14, supra, of the Eastern Class-Rate Investigation to the several northern counties of New Jersey. The findings and evidence are confined to Philadelphia and Camden. It is argued that those findings can exert no force in the northern part of New Jersey. The answer to this is clear. By virtue of the Eastern Class-Rate Investigation points in Northern New Jersey were grouped with New York City. Rates on shipments from Philadelphia to any of the points in Northern New Jersey were parallel with rates on shipments to New York City. Plaintiff ignored this grouping and also the grouping of points in Southern New Jersey with Philadelphia which were likewise established in the Eastern Class-Rate Investigation. Consequently, the intrastate rates between these two points, i. e., points in Southern New Jersey and points in Northern New Jersey, were lower than the interstate rates from Philadelphia to any of the points in Northern New Jersey. It was determined in docket No. 25570, entitled Intrastate Class Rates in New Jersey, 203 I.C.C. 357, that plaintiff's refusal to consider the grouping of Camden with Philadelphia was prejudicial to Philadelphia interests and that Camden should be grouped with Philadelphia. The moment that status was given to shipments from Camden, Appendix K, supra, and finding 14, supra, with reference to the counties in Northern New Jersey became operative as to shipments from Camden to those northern counties. Thus it appears that the only point to be determined in docket No. 25570 was whether Plaintiff's refusal to group Camden with Philadelphia was prejudicial to Philadelphia. Since that was answered in the affirmative, the grouping of Northern New Jersey with New York City was automatically applicable to shipments between it and Camden, because that had existed theretofore in the case of shipments between Philadelphia and Northern New Jersey.

█ Plaintiff further contends the order of the Interstate Commerce Commission is invalid as it is not supported by proper findings. The following quotation from United States v. Baltimore & O. R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 273, 79 L.Ed. 587, is relevant: "In the Florida Case [Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291] the legal distinction was pointed out between what may be termed quasi jurisdictional findings, there held to be indispensable, and the 'complete statement of the grounds of the Commission's determination' which was declared in Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L.Ed. 221, to be desirable for a proper consideration of the case in the courts. The lack of such a complete statement, while always regrettable, because unnecessarily increasing the labor of the reviewing court (compare Virginian Ry. Co. v. United States, 272 U.S. 658, 675, 47 S.Ct. 222, 71 L.Ed. 463), is not fatal to the validity of the order. It is true that formal and precise findings are not required, under section 14(1) of the Interstate Commerce Act (49 U.S.C.A. § 14(1), which declares that the report 'shall state the conclusions of the commission together with its decision.' Compare Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831; Meeker & Co. v. Lehigh Valley R. Co., 236 U.S. 412, 428, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691, P.U.R.1915D, 1072. That provision relieves the Commission from making comprehensive findings of fact similar to those required by Equity Rule 70½ (28 U.S.C.A. following section 723). But section 14(1) does not remove the necessity of making, where orders are subject to judicial review, quasi jurisdictional findings essential to their constitutional or statutory validity."

In the case at bar it seems clear the quasi jurisdictional finding was made. In the Commission's report, docket No. 25570,

Intrastate Class Rates in New Jersey 357,-365, it found that the "intrastate class rates between points in New Jersey commonly grouped with New York City, on the one hand, and Camden and points as to which Camden is intermediate over short-line routes, on the other hand, which are lower than the class rates in effect between Philadelphia and said points in New Jersey grouped with New York City would cause undue prejudice to Philadelphia and shippers therein and undue preference of Camden and shippers therein."

■ A further answer to this contention is found in the following facts: The Commission utilizes a "proposed report plan" under which, after the taking of the evidence and after the filing of briefs, but before the oral argument, the examiner issues his proposed report, finding facts as established by the evidence, and making his recommendations as to the findings and conclusion to be adopted by the Commission. (Rule XIV, Rules of Practice for the Commission, paragraphs (d) 3, 4, 5, and 6). All parties to the proceeding are entitled to file their exceptions to the proposed report, and as a matter of practice the Commission accepts as sound and accurate, and as supported by the evidence, all findings of fact in the proposed report to which no exceptions are made. In the instant case plaintiff filed exceptions but made no objection as to the sufficiency of the findings. Under the Commission's Rules of Practice (Rule XV) it is permissible for any party, after decision, to apply for a rehearing for the taking of additional testimony, for reargument, or for reconsideration. Plaintiff did not apply to the Commission for rehearing in this case. By petition for such rehearing the way was open to plaintiff to urge upon the Commission the argument which it now presents for the first time to the court as to alleged insufficiency of the findings. It should have exhausted its remedies before the Commission before appealing in this respect to the court.

■ Plaintiff also contends that the evidence was insufficient to support the order of the Commission. Its argument is this: First, only two witnesses, Roeder and Davison, undertook to establish the undue preference and undue prejudice as between localities which was found in the Commission's report. Their testimony failed to give necessary details, and was, therefore, incompetent and immaterial,

and fell short of the accepted standard. Secondly, the requirement of the order "that the intrastate class rates to and from Northern New Jersey should be raised to the level of interstate class rates for greater service, i. e., the service to and from New York City is contrary to the evidence." There was ample evidence to support the finding of prejudice. The testimony of Roeder and Davison is supplemented by the entire record of evidence introduced in the proceeding before the New Jersey Board in a prior proceeding. The objection that the testimony does not disclose competition between specific articles or commodities, or reveal the names of persons preferred or prejudiced is without merit. An attempt to deal with individual commodities and shippers in order to prove discrimination in class rates as between localities would be virtually impossible, because thousands of shippers and commodities are involved. Individual shippers were not named because such a disclosure might tend to disrupt friendly commercial relations between Philadelphia and Camden shippers.

Much of the argument in plaintiff's brief invites the court to weigh the evidence, determine that the Commission was wrong, and substitute its judgment for that of the Commission upon the administrative question determined. But it is settled that the court will not do this. In Florida et al. v. United States et al., 292 U.S. 1, 12, 54 S.Ct. 603, 608, 78 L.Ed. 1077, Chief Justice Hughes stated: "The question of the weight of the evidence was for the Commission and not for the court. The authority conferred upon the Commission by section 13(4) of the Interstate Commerce Act, with respect to intrastate rates, is not different in its quality or effect from that given to the Commission to prevent other sorts of unjust discrimination against interstate commerce. That authority rests upon the constitutional power of the Congress, extending to interstate carriers as instruments of interstate commerce, to require that these agencies shall not be used in such manner as to cripple, retard, or destroy that commerce, and to provide for the execution of that power through a subordinate body. Shreveport Case [Houston, E. & W. T. R. Co. v. United States], 234 U.S. 342, 351, 354, 355, 34 S.Ct. 833, 58 L.Ed. 1341; Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., supra [257 U.

550

S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A. L.R. 1086]. The purpose for which the Commission was created was to bring into existence a body which, from its special character, would be best fitted to determine, among other things, whether upon the facts in a given case there is an unjust discrimination against interstate commerce. United States v. Louisville & Nashville R. Co., 235 U.S. 314, 320, 35 S.Ct. 113, 59 L.Ed. 245. That purpose unquestionably extended to the prohibited discrimination produced by intrastate rates. In relation to such a discrimination, as in other matters, when the Commission exercises its authority upon due hearing, as prescribed, and without error in the application of rules of law, its findings of fact supported by substantial evidence are not subject to review. It is not the province of the courts to substitute their judgment for that of the Commission. Interstate Commerce Comm. v. Louisville & Nashville R. Co., 227 U.S. 88, 100, 33 S.Ct. 185, 57 L.Ed. 431; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Virginian Railway Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463; Assigned Car Cases, 274 U.S. 564, 580, 47 S.Ct. 727, 71 L.Ed. 1204; Merchants' Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227; Crowell v. Benson, 285 U.S. 22, 50, 51, 52 S.Ct. 285, 76 L.Ed. 598."

Therefore, the petition of the plaintiff is denied and will be dismissed.