### INTERSTATE COMMERCE COMMISSION v. CONSOLIDATED FREIGHTWAYS, Inc.

#### No. 140 Civil.

District Court, D. North Dakota, S. D.

Nov. 4, 1941.

652

Harry Lashkowitz, Asst. U. S. Atty., of Fargo, N. D., Hallan Huffman, of Washington, D. C., and Clair M. Roddewig, of Minneapolis, Minn., for plaintiff.

Donald A. Schafer, of Portland, Or., for defendant.

SULLIVAN, District Judge.

This suit is brought by the Interstate Commerce Commission under authority of Section 222(b) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 322(b). Its object is to restrain operations by the defendant between Marmarth, North Dakota, and Miles City, Montana, which the plaintiff alleges are unlawful. The matter is before the Court on the plaintiff's application for a preliminary injunction against said operations.

The factual situation, there being no controversy to the same, may be stated as follows:

The defendant is a common carrier by motor vehicle in interstate commerce, operating as such in the District of North Dakota. From March 21, 1941, down to and including the present time, the defendant, on six days of each week, has transported shipments in interstate commerce by motor vehicle on public highways from Marmarth, North Dakota, to Portland, Oregon, and Seattle, Washington. All of such shipments were tendered to and accepted by defendant for transportation at points other than Marmarth, and were shipped by the defendant via the Milwaukee Railroad

from Minneapolis, Minnesota, to Marmarth, North Dakota, such shipments being consigned from the defendant at Minneapolis as consignor, to itself at Marmarth, North Dakota, as consignee. The defendant took delivery on said shipments at Marmarth, North Dakota, and transported the same in its motor vehicles over the public highways from Marmarth, North Dakota, to Portland, Oregon, and Seattle, Washington. Marmarth, North Dakota, is located on U. S. Highway No. 12, and Miles City, Montana, is located on U. S. Highway No. 10, near the junction of Highways Nos. 10 and 12. The defendant first began to transport property by motor vehicle over said Highway No. 12 from Marmarth to Miles City subsequent to October 15, 1935. No claim is made here by the defendant, nor was it made before the Interstate Commerce Commission, that it made use of said Highway No. 12 prior to the "grandfather" date of the Motor Carrier Act. Other common carriers by motor vehicle have authority from the Interstate Commerce Commission to transport property by motor vehicle from Minneapolis and St. Paul, Minnesota, to Billings, Montana, through Marmarth, North Dakota, and Miles City, Montana, over U. S. Highway No. 12.

In February, 1936, the defendant, then known as Consolidated Freight Lines, Inc., filed an application with the Commission under the "grandfather" clause of Section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a), for a certificate of authority to operate as a common carrier over regular routes between Marmarth, North Dakota, and Miles City, Montana, in interstate commerce over U. S. Highway No. 12. That proceeding was identified as docket No. MC–42487. After hearing upon said application, and on June 29, 1938, the examiner issued a recommended report and order. The defendant (applicant) seasonably filed exceptions thereto. The matter came before Division 5 of the Commission, and on January 11, 1939, that Division issued the report and order set out in 11 M.C.C. 131 (Exhibit 1 herein).

The further proceedings in connection with said application may be summarized as follows:

On January 11, 1939, Division 5 of the Commission issued its report and order which denied to the defendant (applicant) authority under the "grandfather" clause to operate between Miles City, Montana, and Marmarth, North Dakota, over U. S. Highway No. 12. The order, by its terms, became effective February 14, 1939.

On the effective date of the order the defendant filed with the Commission a petition for rehearing and reconsideration of the January 11th order.

On January 17, 1941, Division 5 of the Commission, in 27 M.C.C. 705, denied the petition insofar as it requested a rehearing, but granted the request for reconsideration. On that date the Commission sustained its former conclusion with respect to the claimed "grandfather" rights between Marmarth and Miles City. On page 705 of 27 M.C.C. the Commission stated: "In the prior report, 11 M.C.C. 131, applicant was denied authority under the 'grandfather' clause of section 206(a) of the act to operate between Miles City and Marmarth over U. S. Highway 12. Further, it was pointed out therein that this operation was instituted after October 15, 1935, without proper authority from us. Our report herein, in which is included reconsideration of that case in certain respects, does not in any way change such conclusions. * * *"

The pertinent parts of the formal order read as follows:

"It is ordered, That the order entered in No. MC–42487 and No. MC–42487 (Sub-No. 1) on January 11, 1939, effective February 14, 1939, as to part and March 16, 1939, as to the remainder, be, and it is hereby vacated and set aside insofar as it denies applicant a certificate to operate as set forth *in said report herein on the date hereof.*" (Italics supplied.)

"It is further ordered, That in all other respects *the order entered in No. MC–42487 and No. MC–42487 (Sub-No. 1), on January 11, 1939, shall remain in full force and effect except to the extent that a certificate is granted in said report of January 11, 1939, or in our said report herein on the date hereof.*"

The application designated as MC–42487 was the original application for authority under claimed "grandfather" rights. It covered many different routes, including the Miles City-Marmarth route. There were other applications by the predecessor of the defendant. These were designated in the proceeding as MC–42487 (Sub-No. 1), (Sub-No. 2), etc.

The Commission, by its report and order 27 M.C.C. 705, granted the defendant certain authority applied for under its

"grandfather" application, which had been denied by the Commission in its report and order of January 11, 1939 (11 M.C.C. 131).

The defendant, on January 10, 1938, in docket No. MC–42487 (Sub-No. 5), as amended February ·11, 1938, sought a certificate of public convenience and necessity authorizing an extension of operations as a common carrier by motor vehicle between Miles City, Montana, and Marmarth, North Dakota, over U. S. Highway No. 12. After hearing, this application was denied. On reconsideration with No. MC–42487, the previous order of the Commission was approved.

On October 13, 1941, subsequent to the date of the institution of the instant suit, the defendant filed a further petition for reconsideration and rehearing of its "grandfather" application with the Commission. No action, so far as I know, has been taken by the Commission as yet upon said petition.

On May 7, 1938, a criminal information was filed in the District of North Dakota, charging the defendant in several counts with violations of the Motor Carrier Act of 1935, in connection with the transporting of shipments between Marmarth, North Dakota, and Miles City, Montana. All of said violations were alleged to have occurred between September 9th and December, in the year 1937.

On June 17, 1938, the defendant filed a general demurrer to said information, based on the ground "that said counts wholly failed to state any offense against the laws of the United States", and the defendant also filed a motion to quash the information, on the grounds that the counts of the information did not state any offense against the laws of the United States, that the right of the defendant to operate over and upon the most practical highway between Marmarth and Miles· City was before the Interstate Commerce Commission, that said matter was undetermined and no order had been issued by the Commission in respect thereto, and on other grounds not here pertinent.

There is no dispute as to the facts. The matter in dispute is as to the legal effect of the orders made by the Commission.

The plaintiff charges that the operation by the defendant over and upon U. S. Highway No. 12 between ·Marmarth and Miles City is unlawful, and in violation of the orders· of· the Commission. On the other hand, the defendant admits that it is operating over and upon said Highway No. 12, but contends that it has a right to so operate, that the same is lawful, and that it is going to continue such operations.

The defendant contends that (1) its rights under the "grandfather" application have not been finally determined by the Commission; (2) that no irreparable damage has been shown entitling the plaintiff to a preliminary injunction; (3) that the order of the judge of North Dakota sustaining the demurrer to the criminal information constitutes a bar to any inquiry by this Court as to the legality of the defendant's operations—in other words, that the rule of res adjudicata should be applied.

Taking up the first contention of the defendant, it appears from the record that the claim of "grandfather" rights for authority to operate from Marmarth to Miles City over U. S. Highway No. 12 was denied by the Commission on January 11, 1939. The effective date of the order was February 14, 1939. The defendant, up and until the determination of its "grandfather" application, had the right to transport shipments over said U. S. Highway No. 12 between Marmarth and Miles City. Any operation by the defendant after February 14, 1939, over said Highway was unlawful, unless some provision of the Motor Carrier Act became effective as a stay of the enforcement of the order.

Section 204(e) of the Act, 49 U.S.C.A. § 304(e), provided that after a decision or order, any party thereto may make application to the Commission for reconsideration and rehearing of the same; that the Commission may grant either or both of said requests, but it is provided in said Act that: "No such application shall excuse any motor carrier or broker from complying with or obeying any decision, order, or requirement of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission." Section 204(e) was applicable upon the date of said order and continued in effect until September 18, 1940, when it was superseded by 49 U.S.C.A. § 17(8), which in substance provides that when application for rehearing or reconsideration of a decision or order of a division of, or the Commission, is made, and before the decision or order has become effective, the decision or order shall be stayed pending disposition of the matter by the Commission or appellate divi-

sion; "but otherwise the making of such an application shall not excuse any person *from complying with or obeying the decision, order, or requirement, or operate to stay or postpone the enforcement thereof, without the special order of the Commission."*

While the defendant filed an application for a reconsideration of the "grandfather" application with respect to the route involved herein, no order was issued by the Commission staying or postponing the effect of its report and order of January 11, 1939, nor was any attempt made by the defendant in accordance with the provisions of Section 204(e) of the Act towards securing a stay or an extension of time of the effective date of said order. The order of January 11th was effective at the time of its reconsideration. The Commission affirmed its previous action thereon, and on the same date denied defendant's application for new authority, or a certificate of public convenience and necessity to operate over the same route. This latter order became effective March 20, 1941. No petition for a review of either of said orders was filed with the Commission until October 13, 1941.

The record discloses two orders of the Commission affecting operations over Highway No. 12 between Marmarth and Miles City, each of which denied defendant authority, and neither of which has been stayed by order of the Commission or automatically by petitions for review or reconsideration. This Court must necessarily treat these orders as being effective at all the times here involved.

The defendant argues that it has a legal right to operate over the most practical and economical routes between the point of origin of its shipment and the point of destination, providing it has authority to operate between the fixed termini, and that the Commission was in error in refusing authority to use rail service from Minneapolis to Marmarth and motor truck service over Highway No. 12 to Miles City.

■ The purpose of the Motor Carrier Act was to regulate motor carriers, and to bring about order and responsibility in the field of motor transportation. The administration of the Act was entrusted to the Interstate Commerce Commission, however, with power in the courts to review the acts and orders of the Commission in a direct proceeding brought by the applicant against the Commission, testing the validity of such reports and orders. See 49 U.S.C.A. § 17(9).

The Commission found on the showing made before it that the defendant was not entitled to authority, either under its "grandfather" application, or its application for a certificate of public convenience and necessity.

■ In a direct attack on a Commission order, as the same is contemplated under 49 U.S.C.A. § 17(9), the Court is bound by the findings of fact by the Commission in the absence of the evidence upon which the same are based. See O'Malley v. United States et al., D.C., 38 F.Supp. 1, and cases cited.

■ The Court is not permitted to consider the soundness of the reasoning of the Commission in arriving at its conclusion, nor is it permitted to consider "whether its findings are consistent with those made by it in other cases. It is only when there is some irregularity in the proceeding before the Commission or some error in the application of the law by the Commission that the court can disturb the Commission's determination." O'Malley v. United States et al., supra, 38 F.Supp. page 3.

■ It was the Commission's duty to analyze and determine the controverted facts arising before it. United States et al. v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162.

If the Commission errs in its application of the law to evidence received before it, legal machinery is provided for a test thereof in a direct proceeding. See 49 U. S.C.A. § 17(9); 28 U.S.C.A. § 47.

■ The contentions made by the defendant here amount to an indirect attack upon an order of the Commission, which the defendant in this proceeding seeks to invalidate. Suits seeking to set aside orders of the Commission may only be tried under the Urgent Deficiencies Act, 28 U. S.C.A., § 47. See Powell et al. v. United States et al., 300 U.S. 276, 288, 57 S.Ct. 470, 81 L.Ed. 643.

■ There is no foundation or basis in the law for collateral attack upon an order of the Commission. Compare: Board of Public Utility Commissioners of New Jersey v. United States et al., D.C., 21 F. Supp. 543, 547; Powell et al. v. United States et al., supra, 300 U.S. page 288, 57 S.Ct. 470, 81 L.Ed. 643; Venner v. Michigan Central Railroad Company, 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868.

656

The defendant next urges that, no showing having been made by the plaintiff of irreparable injury, preliminary injunction should not issue.

Section 222(b) of the Act, 49 U.S.C.A. § 322(b), is to the effect that if any carrier "operates in violation of any provision" of the Act, the Commission may apply to the district court of the United States for the enforcement of such provision, and the court shall have authority to enforce obedience by injunction or other process, restraining the carrier from further violation.

The operation of the defendant on U. S. Highway No. 12 from Marmarth to Miles City was and is unlawful. The defendant has not abandoned such operation, but states that it will continue the same. So here we have a continuing violation of the Act.

The right to injunction is conferred by a specific statute. Cases cited by the defendant treat with the rule requiring a showing of irreparable injury before the issuance of a temporary injunction, and the right to injunction is not based on any specific statute. These, of course, have no application to the matter here under consideration. The purpose of the statute is to restrain further violations of the Act. The Commission is not required to prove irreparable damage. See Interstate Commerce Commission v. All American Bus Lines, Inc., et al., D.C., 22 F.Supp. 525; Securities & Exchange Commission v. Jones, 2 Cir., 85 F.2d 17; Securities & Exchange Commission v. Torr et al., 2 Cir., 87 F.2d 446.

The last contention made by the defendant is to the effect that the order sustaining the demurrer to the counts of the information constitutes an adjudication of the questions here involved. The judge hearing the matter filed no memorandum. The demurrer was addressed to the sufficiency of the information and the matters therein stated. The violations charged in the information were prior to the date of the order of the Commission determining the rights of the defendant under its applications for authority. Operations by the defendant prior to February 14, 1939, over the route on which it claimed "grandfather" rights were not in violation of the law, and that is, no doubt, what the Court ruled in sustaining the demurrer.

We have here a new legal situation which has been created by the orders of the Commission denying the defendant authority. Operations have been carried on subsequent to the dates of such orders, and the "precise" question in this case was not raised or determined in the criminal proceeding in which the demurrer was sustained. Under such circumstances the doctrine of res adjudicata has no application. See: Russell v. Place, 94 U.S. 606, 24 L. Ed. 214; De Sollar v. Hanscome, 158 U.S. 216, 15 S.Ct. 816, 39 L.Ed. 956.

Findings of fact and an order authorizing issuance of a temporary injunction are being filed herewith.