## UNITED STATES v. BEATTY.

### Civ. No. 941.

United States District Court
S. D. Iowa, Central Division.

Feb. 16, 1950.

Randal J. Elmer, Litigation Attorney, Chicago, Ill. (William S. Kaplan, Chief, Litigation Section, Chicago, Ill., on the brief), for plaintiff.

John Connolly III (of Connolly, O'Malley & McNutt), Des Moines, Iowa, for defendant.

SWITZER, District Judge.

The above entitled matter came on for hearing in open court at Des Moines, Iowa, on the 20th day of December, 1949, on its merits. The attorneys were permitted to present their arguments to the court by written briefs. The court, being advised, finds:

## Facts

The defendant, Richard H. Beatty, acquired the ownership of an apartment house consisting of seven apartments of eight rooms each. He took possession of this building on Feb. 15, 1948, on which said date and for some time prior thereto the following numbered apartments had been occupied by the persons whose names are set opposite each as housing accommodations:

Apartment #1—H. E. Terrell;

Apartment #3—G. Clark;

Apartment #4—L. R. McKibben;

Apartment #5—Katherine M. Robinson; which said persons, except for H. E. Terrell who removed March 31, 1949, continued to occupy said premises continuously until July 1, 1949. It is conceded that during all of this time the defendant occupied the position of owner-landlord of said premises.

As contemplated by Section 202(d) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1892(d), the premises involved here are located within the Des Moines-Defense Rental Area. Pursuant to a rent regulation for controlled housing accommodations under Section 204(d) of said Act, 50 U.S.C.A. Appendix, § 1894(d), found in 12 Fed. Register 4331 and 14 Fed. Register 1570, the lawful maximum rent to be exacted by the landlord for the use or occupancy of housing accommodations in the Des Moines-Defense Rental Area was established, and that pursuant thereto, the maximum rental which could lawfully be exacted by the defendant for each of the apartments in question during the period from March 1, 1949, and at all times pertinent in this action, was, as follows:

Apartment #1—$61.53 per month;

Apartment #3—$64.40 per month;

Apartment #4—$61.53 per month;

Apartment #5—$61.53 per month; which said maximum rentals were well known to this defendant.

It is conceded by the defendant that he received the sum of $75 per month from the occupants of said premises for the

period fixed opposite their respective names to wit:

Apartment #1—H. E. Terrell, to March 31, 1949;

Apartment #3—G. Clark, to April 30, 1949;

Apartment #4—L. R. McKibben, to April 30, 1949;

Apartment #5—Katherine M. Robinson, to April 30, 1949.

But it is claimed by the defendant that said sums were not received by him as "rent" but as "damages" pursuant to an Iowa statute which reads as follows: "A tenant giving notice of his intention to quit leased premises at a time named, and holding over after such time, and a tenant or his assignee willfully holding over after the term, and after notice to quit, shall pay double the rental value thereof during the time he holds over to the person entitled thereto." Section 562.2, Code of Iowa, 1946, I.C.A.

Defendant further contends that the occupants of these premises were not tenants. He admits that he intended that they remain in possession pursuant to an agreement which he had made with them, whereby they, in effect, admitted the termination of their tenancy as of March 1, 1949, and that they were thereafter occupants of said premises at the sufferance of the landlord and liable for the payment of damages as contemplated by the Iowa statute, in lieu of rent. There was evidence that most of the checks in the sum of $75 each, paid to the defendant by these various occupants, had written on their face a notation that the same was given in payment of "damages" or "rent and damages;" and that, although the defendant had written on at least one of the checks the words "damages" himself, the occupants of the premises gave their assent to such change and had knowledge that the checks so provided on their face.

In the early part of November 1948, defendant caused to be served upon each of the occupants named herein, a 60-day notice to quit, containing the declared intention of the defendant that he desired to recover possession of said housing accommodations for the purpose of substantially altering or remodeling the same. That subsequent thereto, and in January and February of 1949, a 30-day and a 3-day notice to quit said premises were served upon each of the foregoing tenants. And it is not disputed that during the running of the period covered by these respective notices, and before the termination of the time within which the occupants were to quit the premises, defendant had many conversations with them, both individually and through his attorney, during which the occupants were advised that they could no longer remain as tenants, but that, if they were willing to abide by the provisions of the damage statute, quoted above, and voluntarily submit themselves thereto, they would be permitted to remain upon the payment to the defendant of $75 monthly. It appears that each of the said occupants tacitly agreed to such procedure. Written agreements prepared by the defendant's attorney were entered into between the defendant and the occupants—Clark, McKibben and Robinson— which so-called stipulations were captioned: "In the Municipal Court of the City of Des Moines, Polk County, Iowa;" entitled— "Richard Beatty, Plaintiff, v. (each of the above named persons as defendants)." These stipulations set forth the service of the 60-day notices, the 30-day and the 3-day notices above referred to, and provided that the plaintiff is entitled to possession of the premises because the defendant named therein was wrongfully holding over after the termination of his oral lease. Such stipulations further provide that—

a. All notices required by the Iowa law and the Federal Rent Law have been duly served.

b. Defendants' tenancies have been terminated and defendants are wrongfully holding over.

c. Plaintiff is entitled to the use and occupancy of the premises.

d. Holding over by the defendants or payments made by the defendants to the plaintiff do not constitute renewal of leases, and acceptance of monies by the plaintiff does not constitute a waiver of his rights to immediate possession.

e. Plaintiff may file the stipulation at his option and that the defendants agree to vacate the premises "on or before the —— day of ——, 1949," and that if plaintiff should not seek a Court Order on the above date, it would not constitute a waiver of his rights to file the stipulation, and that he may secure a Court Order for the defendants' eviction at his option and "that a writ of removal and execution may be entered in the above entitled cause at any time after the —— day of ——, 1949," and that defendants consent to the entry of a decree of judgment against them.

It appears from the evidence that none of the blank dates appearing in these stipulations were ever filled in.

The occupant H. E. Terrell did not execute such a stipulation, whereupon defendant instituted a Forcible Entry and Detainer Action in the State court against him. This action was never pressed to a conclusion, but was voluntarily dismissed by the plaintiff; despite which fact, the said Terrell did remain in possession until March 31, 1949. At the same time the said stipulations above referred to were entered into, there was prepared by the defendant's attorneys and submitted to the occupants—Clark, McKibben and Robinson—a paper captioned: "In the Municipal Court of the City of Des Moines, Polk County, Iowa," entitled—"Richard Beatty, Plaintiff, v. (each of the three occupants)," —which purported to be a judgment entry in each case and, in effect, provided for a finding by that court that the plaintiff was entitled to immediate possession of the premises. None of these so-called judgment entries bore any dates, or provision as to the time when it was planned they were to be filed, nor is there any evidence that any of them were so filed or entered by that court. Each, however, were signed by the three occupants in question with the notation on each—"Approved as to Form and Contents."

## Opinion

With this background of facts, granted that defendant's view thereof may be at some variance with that of the court thereon, defendant strongly contends:

(1) that it is not a violation of the Housing and Rent Act of 1947, as amended, to collect damages from a tenant who wrongfully holds over, after termination of his tenancy and after having been served with notices to quit, as required by law.

(2) That the United States is not authorized to collect treble damages, or to bring suit for restitution under the Housing and Rent Act of 1947, as amended.

(3) That if any violation occurred by the defendant, it was unintentional on his part and hence his liability, if any, is limited to the overcharge.

(4) That the United States is not entitled to an injunction.

The crucial question in this controversy is, whether defendant has a valid defense in his contention that he was merely acting within his rights under the Iowa double rent statute—Section 562.2, Code of Iowa, 1946, I.C.A.—in taking additional sums from his tenants as damages for the reason that they were "willfully" holding over after legal notices to quit had been served upon them.

That Section 562.2, Code of Iowa, 1946, I.C.A., provides in part: "* * * and a tenant or his assignee willfully holding over after the term, and after notice to quit, shall pay double the rental value thereof during the time he holds over to the person entitled thereto."

Innumerable definitions of the word "willfully" may be found in the cases relating to criminal penalties. This statute however merely lays a civil penalty. In Kempe v. United States, 8 Cir., 151 F.2d 680, 688, is the statement: "In statutes denouncing offences involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication."

The Supreme Court of Iowa in 1876 in the case of Stewart v. Burlington & M. R. R. Co., 32 Iowa 561, 563, in construing a statute providing that a railroad company failing to fence its roadway against livestock running at large, should be liable to

the owner of any such stock injured or killed by reason of the want of such fence, unless the injury complained of is occasioned by the "willful" act of the owner or his agent, said: "A willful act is an obstinate, stubborn, perverse act; and an act done willfully is one done stubbornly, by design, with set purpose. Now, the mere passiveness which indolently permits an act to be done through the lack of will to prevent, falls very far short of that positive condition of the mind which causes an act to be done by design and with set purpose."

■ Applying these definitions of willfully to the acts of the tenants here in continuing their occupancy of the premises after the defendant had served them with notices to quit, the court cannot find the least trace of a willful conduct on the part of said tenants such as could justify a court to apply the double rent penalty. Obviously, to fulfill the requirements of that statute so that the defendant might legally collect double rent or damages, the tenants must have willfully held over without the consent, express or implied, of the landlord, defendant here. Such is not the case. Regardless of the mode or procedure employed, the court must conclude that, as stated by the defendant himself when testifying in this case, the tenants held over after March 1, 1949, merely "at his sufferance." Had the defendant here proceeded pursuant to the notices to quit heretofore referred to with an eviction action, and conducted himself in an adversary manner at all times with reference to the occupants, a different conclusion would necessarily be reached.

The court will naturally scrutinize with great care any defense of this kind which, one must admit, appears on its face, to be but an attempt on the part of a resourceful landlord to circumvent the full impact of the Rent Act. To permit, by the administrative authorities or the courts, an overriding of the sanctions embodied in the Rent law in this manner would soon nullify the Act, to be sure. Congress anticipated such resourcefulness on the part of landlords by the very wordings of the Act wherein all devices to obtain greater amounts than established by the rent authorities are banned. Section 202(e) of the Housing and Rent Act of 1947, as amended, reads: "The term 'rent' means the consideration, including any bonus, benefit, or gratuity demanded or received for or in connection with the use or occupancy of housing accommodations or the transfer of a lease of such accommodations."

And Section 204(b) of the Act states: " * * * during the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended * * *."

■ A state law, such as the Iowa double rent statute, Sec. 562.2, Code of Iowa, 1946, I.C.A., so directly affecting the operation of the national Rent Act, as disclosed by the facts here, must yield precedence, when the issue arises, to the national legislation. It is unnecessary to cite authorities on this point as the laws of the Congress are the supreme laws of the land and state laws in controvention thereof cannot stand.

Defendant relies strongly on the authority of Kruse et al. v. Ballsmith, 332 Ill. App. 301, 75 N.E.2d 140. However, the fact situation there describes "obstinate, stubborn, perverse acts" on the part of the tenants holding over from October 1945 to the end of the summer of 1946, despite all legal means to evict them. Conceding the extreme facts in that case, still we feel the opinion of the Illinois court therein, a lower appellate court and not the Supreme Court of the State, is a minority view and that the case of McGuinn v. McLain, decided recently by the Supreme Court of North Carolina, reported in 225 N.C. 750, 36 S.E.2d 377, 379, is the correct rule, to the effect that a statute authorizing the collection of double rent from tenants holding over is superseded by the Federal Housing and

Rent Act of 1947, as amended, restricting landlords to no more than the maximum allowable rent. In the North Carolina opinion appears a statement which the court considers controlling law: "But, so long as the Rent Control Act is effective in a particular locality, a landlord who owns rental property therein and subject to the provisions of the Act cannot assert under the local law any right in conflict with said Act."

Having concluded that the facts and the law on this main issue are against the contentions of the defendant, the court is abidingly satisfied after studying the exhaustive briefs of the parties, that on all the other points of the case, the law is as urged by the Government, that is—

That the United States is authorized to collect treble damages for violations occurring prior to April 1, 1949, as well as those subsequent thereto.

On this, the court is convinced that Section 205 of the Housing and Rent Act, as amended March 30, 1949, 50 U.S.C.A. Appendix, § 1895, permits the recovery by the United States of treble damages occurring prior to the passage of this amendment, where suit has been brought thereon within one year after date of a violation. Section 205, as amended, in part reads: "Provided, that if the person from whom such payment is demanded, accepted, or received either fails to institute an action under this section within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the United States may institute such action within such one-year period."

Former Emergency Price Control legislation was specific in its limitation to apply only to violations occurring after the enactment of the Act. From a reading of the many cases on this point, the court is convinced that the omission to so limit the present Housing and Rent Act was intended to cause it to apply retroactively and to avoid any gap in the enforcement of treble damages.

Defendant contends that the violations laid against him by the Housing Expediter herein were neither wilful nor due to failure to take practicable precautions. By this contention defendant seeks to avail himself of the statutory exception in the Act to the levying of treble damages by the court, as provided for in Section 205 of said Act. As was said by the court in Small v. Schultz, 7 Cir., 173 F.2d 940, such a defense must be pleaded and proven, in the absence of which it is mandatory upon the court to award treble damages for the amount of the overcharge. In the instant case the defendant has pleaded the so-called "good-faith defense", but has failed to sustain the burden of proof by a preponderance of the evidence as it is incumbent upon him to do to prevail.

Having resolved the main issues of this case against the defendant, we must now look to the question of whether or not an injunction should issue as prayed for by the plaintiff. Section 206(b) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, § 1896(b), states expressly the conditions upon which an injunction may be obtained. It provides: "Whenever in the judgment of the Housing Expediter any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this Act, or any regulation or order issued thereunder, the United States may make application to any Federal, State, or Territorial court of competent jurisdiction for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, *and upon a showing that such person has engaged* or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond." (Italics by the court.)

The right of the United States or any agency thereof to obtain an injunction provided for by statute stands upon a different footing than a private party's right thereto, the distinction being that instead of procedural mechanism for the protection of private rights, the statutory injunction is for the purpose of effectuating Congressional policy and vindicating public rights. Hence, the tradi-

652

tional equity concepts for the issuance of injunctions do not apply. The conditions upon which statutory injunctions shall issue are solely those provided by the statute in question, as was stated by the court in United States v. San Francisco, 310 U.S. 16, at page 31, 60 S.Ct. 749, at page 757, 84 L.Ed. 1050: "The equitable doctrines relied on do not militate against the capacity of a court of equity as a proper forum in which to make a declared policy of Congress effective. Injunction to prohibit continued use—in violation of that policy—of property granted by the United States, and to enforce the grantee's covenants, is both appropriate and necessary."

To the same effect see Securities and Exchange Commission v. Torr, 2 Cir., 87 F.2d 446; United States v. Adler's Creamery, Inc., 2 Cir., 110 F.2d 482, certiorari denied, Adler's Creamery v. U. S., 311 U.S. 657, 61 S.Ct. 12, 85 L.Ed. 421. And, in accordance with the general rule, it is well settled that in an application for a statutory injunction no showing of irreparable injury need be made. American Fruit Growers v. United States, 9 Cir., 105 F.2d 722; Interstate Commerce Commission v. Consolidated Freightways, D.C., 41 F.Supp. 651; Fleming v. Salem Box Co., D.C., 38 F.Supp. 997; Interstate Commerce Commission v. All American Bus Lines, D.C., 22 F.Supp. 525.

It, therefore, follows, under the authorities, that restitution should be ordered, treble damages allowed and a permanent injunction ordered as prayed by the plaintiff herein. Porter v. Warner Holding Company, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332.

The Clerk will enter the following order:

This matter having come on for hearing before the court on its merits, and the parties having argued the issues orally and by briefs of counsel and the court being fully advised:

It is ordered that plaintiff have judgment against the defendant as prayed, and the attorney for the plaintiff may prepare a judgment entry in conformity with the findings and conclusions of the court herein. Defendant excepts.