**O'MALLEY v. UNITED STATES et al.**
Civ. A. No. 209.

District Court, D. Minnesota,
Third Division.

April 17, 1941.

Before SANBORN, Circuit Judge and BELL, and SULLIVAN, District Judges.

Richard J. Leonard and Doherty, Rumble, Butler, Sullivan & Mitchell, all of St. Paul, Minn., for plaintiff.

Frank Coleman, Sp. Asst. to Atty. Gen., John W. Graff, Asst. U. S. Atty., of St. Paul, Minn., and Daniel H. Kunkel, Atty., Interstate Commerce Commission, of Washington, D. C. (Thurman Arnold, Asst. Atty. Gen., and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D.C., of counsel), for defendants.

PER CURIAM.

The plaintiff in his complaint alleges that he is, and was prior to June 1, 1935, a carrier by motor vehicle transporting goods in interstate commerce for the general public and for specific contract shippers; that he is and was entitled to have issued to him, under the provisions of the

Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., a certificate of public convenience and necessity authorizing him to continue his operations as a motor carrier; that he filed application with the Commission therefor on December 4, 1935; that, after a hearing, his application was denied; and that the denial of his application was due to a misconstruction of the provisions of the Motor Carrier Act by the Commission. He prays that the order denying his application be set aside.

The defendants in their answers admit that plaintiff made application to the Commission for a certificate of convenience and necessity, as he alleges, but they deny that there was any misconstruction or misapplication of the law by the Commission. The Commission asserts that its order denying plaintiff's application was a lawful order, made after a hearing, and that its findings and determination were based upon the evidence taken at the hearing.

Sec. 206(a) of the Act, 49 U.S.C.A. § 306(a), provides that no common carrier by motor vehicle shall engage in any interstate or foreign commerce without a certificate of convenience and necessity issued by the Commission. Sec. 209(a), 49 U.S.C.A. § 309(a), provides that no person shall engage in the business of a contract carrier by motor vehicle without such a certificate. Sec. 206(a) contains a proviso that "if any such carrier * * * was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, * * * and has so operated since that time * * *, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, * '* *." Sec. 209 (a) contains a similar proviso with respect to contract carriers doing business on July 1, 1935. These provisos are known as "grandfather" clauses.

Sec. 203(a) (14) of the Act, 49 U.S.C.A. § 303(a) (14), defines the term "common carrier by motor vehicle" as "any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, * * * for the general public in interstate or foreign commerce by motor vehicle for compensation, * * · *." Sec. 203(a) (15) of the Act defines "contract carrier by motor vehicle" as "any person, not included under paragraph (14) of this section, who or which, under special and individual contracts or agreements, and whether directly or by a lease or any other arrangement, transports passengers or property in interstate or foreign commerce by motor vehicle for compensation."

It appears from the report of the Commission that the plaintiff applied to it, under the "grandfather" clauses above referred to, for a certificate of convenience and necessity entitling him to continue operation as a common and contract carrier by motor vehicle between St. Paul, Minnesota, and Fargo, North Dakota, and between Minneapolis, Minnesota, and Superior, Wisconsin, over regular routes, and between Minneapolis, St. Paul, Duluth, Superior, Fargo and Chicago over irregular routes, and that, in addition, he thereafter applied for a license as a broker of transportation by motor vehicle between Chicago, Minneapolis, St. Paul, Fargo and Superior; that he was given a hearing upon his applications, and that thereafter they were denied. The plaintiff does not challenge so much of the order of the Commission as denied him a broker's license, nor does he claim that his operations in securing the transportation of property, between the Twin Cities and Chicago entitled him to a permit as a common or contract carrier by motor vehicle. His claim is that he was, and was in effect found by the Commission to be, such a carrier with respect to his operations between St. Paul and Fargo, and between Minneapolis and Superior, but was wrongfully denied a certificate.

The facts shown by the report of the Commission are substantially as follows: That the plaintiff commenced operations in August, 1932, selling and providing transportation to shippers; that, except for the period from October 21, 1935, to October 11, 1937, he has had no line-haul motor equipment, but has used carriers to perform the transportation which he has contracted for; that his present operations do not differ substantially from those which he was conducting on June 1, 1935; that he has contracts with shippers to transport commodities for them at specified rates; that he also renders transportation service to shippers with whom he has no contracts; that for carrying out his undertakings he uses motor contract carriers operating between St. Paul and Fargo and between Minneapolis and Superior, which carriers, he claims, operate under his control; that these carriers maintain their

own liability and property damage insurance, procure their licenses, employ their drivers, and operate their trucks in their own names; that the plaintiff has paid pilferage and damage claims to shippers, under an arrangement whereby the carriers are required to reimburse him; that these carriers bear the expense of any damage to their trucks and "are considered" by plaintiff not to be his employees, but to be independent contractors; that they operate under oral agreements with him, which provide that they will move freight whenever he has any to move; that under these agreements between the plaintiff and the carriers, they are not required to handle freight unless they choose to do so, and can withdraw from the agreements at will; that the relationship between the plaintiff and the carriers that he uses to transport freight from the Twin Cities to Fargo and Superior is the same as his relationship with the rail and motor carriers which he uses to transport freight to Chicago, except that he claims that the former operate exclusively for him; that the plaintiff "allegedly" has charge of the loading and unloading of the freight; that he claims to have charge of the billing of freight and the dispatching of the trucks, and that he has directed the drivers when to go, when to return, and where to deliver, and has paid the cargo insurance; that he stated upon the hearing upon his applications that the only difference between his Chicago operations, rail and motor, and his operations between the Twin Cities and Fargo and Superior lies in the fact that in the latter operations the carriers are used exclusively by him.

The Commission did not find in its report that the plaintiff issued bills of lading, or that he had charge of loading or unloading freight, or that he directed or controlled the operations of the carriers that he utilized, or that they operated for him exclusively. It ruled that, in determining plaintiff's status under the Act, the fact that the carriers operated exclusively for him, "if they did", was in no way controlling.

The determination of the Commission, as we understand it, is that the plaintiff, at all times which are material, was a person who contracted to transport freight for shippers by motor vehicle; that in carrying out his contracts he has had oral arrangements, terminable at will, with contract carriers by motor vehicle, who were not shown to be subject to his direction and control; and that, therefore, his status was not that of a common or contract carrier by motor vehicle within the meaning of the Motor Carrier Act.

The Commission appears to have consistently ruled that to be a carrier by motor vehicle one must have direction and control of the motor vehicles which do the carrying for him, so that he is responsible both to the shipper and to the general public for their operation; or, in other words, that with respect to the motor vehicles which he uses he must stand in the relation of proprietor by virtue of ownership, lease, or other arrangement, and that mere user, in the absence of control or direction, even though exclusive, is not enough. Compare, Dixie Ohio Express Co. Common Carrier Application, 17 M.C.C. 735; Galveston Truck Line Corporation Contract Carrier Application, 22 M.C.C. 451; Smythe Contract Carrier Application, 22 M.C.C. 726; Dixon Contract Carrier Application, 21 M.C.C. 617; Rosenblum Truck Lines, Inc., Contract Carrier Application, 24 M.C.C. 121, reversed in Rosenblum Truck Lines, Inc. v. United States, et al., D.C., 36 F. Supp. 467.

The plaintiff appears to base his contention that the Commission misconstrued the law, upon the facts as he claims them to be, and not upon the facts as the Commission states them to be in its report. If the Commission had found that the plaintiff issued bills of lading, procured, loaded and unloaded freight, and that he controlled and directed the operations of the carriers to such an extent as to make him responsible to the shippers and to the public for their operations, a different situation would be presented.

A finding of fact by the Commission, in the absence of the evidence upon which it is based, is conclusive. Chicago, I. & L. Ry. Co. v. United States, 270 U.S. 287, 295, 46 S.Ct. 226, 70 L.Ed. 590; Louisiana & Pine Bluff Ry. Co. v. United States, 257 U.S. 114, 116, 42 S.Ct. 25, 66 L.Ed. 156; Nashville, Chattanooga & St. Louis Ry. Co. v. State of Tennessee, 262 U.S. 318, 324, 43 S.Ct. 583, 67 L.Ed. 990. This Court cannot consider the soundness of the reasoning upon which the conclusion of the Commission was reached or whether its findings are consistent with those made by it in other cases. It is only when there is some irregularity in the proceeding before the Commission or some error in the application of the law by the Commission

**4**

that the court can disturb the Commission's determination. Virginian Railway Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941; Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 182, 59 S.Ct. 160, 83 L.Ed. 111. "Whether an applicant seeking exemption [under the "grandfather" clauses of the Motor Carrier Act] had in fact been in operation within the immunizing period of the statute was bound to raise controverted matters of fact. Their determination Congress entrusted to the Commission." United States v. Maher, 307 U.S. 148, 153, 154, 59 S.Ct. 768, 771, 83 L.Ed. 1162.

■ The evidence taken before the Commission, upon which its findings and order were based, is not before us. The findings of fact disclosed in its report are not inconsistent with its determination. We think that no misapplication of the law to the facts is disclosed by the record.

It is ordered that the complaint of the plaintiff be and the same is hereby dismissed.