## MOORE v. UNITED STATES et al.
### No. 253 Civ.

District Court, D. Minnesota, Third Division.

Nov. 17, 1941.

Thomas W. Walsh, of St. Paul, Minn., for plaintiff.

S. R. Brittingham, Jr., Sp. Asst. to Atty. Gen., for United States.

Allen Crenshaw, of Washington, D. C., Atty., Interstate Commerce Commission, for Interstate Commerce Commission.

Before SANBORN, Circuit Judge, and BELL and SULLIVAN, District Judges.

PER CURIAM.

This is a statutory suit, 28 U.S.C.A. §§ 41(28), 43, 48, to set aside and permanently enjoin the enforcement of an order of the Interstate Commerce Commission, entered on March 13, 1941, in a proceeding before it, wherein plaintiff was the applicant, entitled, "No. MC-17481 et al., filed February 12, 1936, Ernest E. Moore, common carrier applications". Interlocutory judgment has been applied for. At the hearing upon this application the evidence taken before the Commission was introduced in evidence, and the case, upon stipulation of the parties in open court, has been submitted for final decree.

The plaintiff in his complaint alleges that he was, on June 1, 1935, and continuously thereafter has been a carrier by motor vehicle, engaged in bona fide operation over the public highways in the States of Minnesota, Wisconsin, Illinois, Nebraska, Iowa, South Dakota and North Dakota, transporting goods for the general public and for specific contract shippers; that he is and was entitled to have issued to him under the provisions of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a), a certificate authorizing him to continue his operations as a motor carrier. His applications, seeking certificates of authority to operate as a common carrier, contract carrier, irregular common carrier, or as a broker for the transportation of goods in interstate commerce, were filed with the Commission on or about February 12, 1936. After a hearing before the Commission, and on March 13, 1941, said applications were denied. Application for a reconsideration of the March 13th order was likewise denied. The complaint alleges further that the Commission improperly construed the Motor Carrier Act, that the defendant Commission, in making its report and conclusions, acted arbitrarily and unlawfully, and in conflict with the evidence

before it; that the proof submitted by the plaintiff clearly shows that he is entitled to certificates as a common carrier over the routes set forth in his applications. Plaintiff prays that the orders of the Commission denying his applications for authority to continue his operations as a motor carrier be set aside, that defendants be restrained from prosecuting the plaintiff for alleged violations of the Motor Carrier Act, and for such other relief as may be proper in the premise.

The defendants in their answers admit that the plaintiff applied to the Commission for certificates of public convenience and necessity, that hearings were held, evidence taken in the matter of said applications, and that the Commission made orders denying petitioner's applications; that an application by plaintiff for a reconsideration of said orders was likewise denied. The defendants deny that the Commission improperly construed said Motor Carrier Act, that it acted arbitrarily, unlawfully and in conflict with the evidence before it, and that the proof submitted by the plaintiff entitles him to certificates of authority to operate as a common carrier, and pray that the action of the plaintiff be dismissed.

The plaintiff contends in his oral and written arguments that (1) the orders of the Commission deprive the plaintiff of his property without, and deny him, due process of law in that the orders are based upon matters foreign to, and outside of the record; (2) that the findings of the Commission are not supported by substantial evidence; (3) that the orders and ultimate conclusions of the Commission are not supported by facts, or the primary facts, as found by the Commission; (4) that the Commission's denial of plaintiff's motion for rehearing before it was arbitrary and unreasonable.

Section 206(a) of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a), provides that no common carrier by motor vehicle shall engage in interstate or foreign commerce without a certificate of convenience and necessity issued by the Commission. However, it is provided in said section that if any such carrier was in bona fide operation as a common carrier by motor vehicle on June 1, 1935, and continued said operation since that time, the Commission should issue such certificate without requiring further proof of public necessity or convenience. This last referred-to provision is known as the "grandfather" clause.

It appears that the plaintiff, on February 12, 1936, filed with the Commission four applications under the "grandfather" clause of said Motor Carrier Act, seeking certificates of public convenience and necessity, or a permit authorizing continuance of operation: (1) in MC-17481, as a common or contract carrier by motor vehicle between Minneapolis and St. Paul, Minnesota, and Chicago, Illinois, over two regular routes, one through Madison, Wisconsin, and the other through Rochester, Minnesota, and Waterloo, Cedar Rapids and Clinton, Iowa; and between points in Minnesota, Iowa, Wisconsin and Illinois, over numerous specified routes; (2) in No. MC-21231, as a common or contract carrier between points in Minnesota and points in Wisconsin, Illinois, Nebraska, Iowa, North Dakota and South Dakota, over undescribed regular and irregular routes; (3) in Nos. MC-19693 and MC-24697, applicant seeks authority embraced in whole or in part within the two above referred-to applications.

By application under Section 211 of the Motor Carrier Act, 49 U.S.C.A. § 311, in No. MC-80532, filed on February 12, 1936, plaintiff applied for a license authorizing operation as a broker for the purpose of arranging transportation of general commodities by rail, water and motor vehicle. This last application, however, was abandoned, and no evidence was adduced bearing thereon. The plaintiff, before the Commission, limited his applications to authority to operate over the routes set out in said applications in the States of Minnesota, Iowa, North Dakota, South Dakota, Wisconsin and Illinois. The applications were heard on a consolidated record.

The facts may be summarized as follows: Plaintiff in 1906 became engaged in the local cartage business in St. Paul and Minneapolis, Minnesota, and continued exclusively in that business until 1929, first using motor vehicles in the year 1916. In 1929 he commenced long distance operations by motor vehicle. On June 1, 1935, plaintiff owned outright a pick-up truck which he used to transfer freight from customers to his garage, where the freight was transferred to larger trucks. He claims to have been the owner of a truck and trailer which apparently was in the name of one Arlo Davis. This truck was operated through the State of Wisconsin. He used twelve or fourteen trucks under oral leases, and claimed to have an equity in four pieces of this equipment, created by the advance-

ment of money to the owner-operators for payment on their respective finance contracts covering equipment. There is no evidence of any lien on these trucks. Open notes were taken to cover such advancements. Davis secured authority to operate in Wisconsin in September, 1934, and filed public liability and property damage insurance with the Wisconsin authorities in connection with his permit.

The Davis equipment was operated principally in Wisconsin, occasionally in Iowa, never in North Dakota, and plaintiff was unable to state that it was ever used in Illinois. Plaintiff's name did not appear on this equipment. Davis transferred whatever title he had in this equipment to the plaintiff early in the year 1936, and plaintiff operated this equipment until February, 1937. However, at the time of the hearing in 1937, this equipment was not in use and had not been in use for two months prior thereto. There was no explanation given as to the discontinuance of its use. Davis severed his connections with Moore at the time of the transfer of title of said truck. While he was operating the truck he was paid a salary of $175 per month. However, he was to pay any necessary help.

Under plaintiff's arrangements with owner-operators other than Davis, when sufficient freight had been secured by him he would select a truck owner having operating permits in the states to be entered in the transportation of the shipments. The truck owners used by plaintiff were generally paid 90 per cent. of the total freight charges collected, although in some instances they were paid on a trip, mileage, or hourly basis. It may be generally stated that the plaintiff received ten per cent. of the gross freight charges collected for his services. The owner-operator hired and paid such extra drivers and helpers as were needed, paid all operating expenses, secured in their own names such state authorities as were held, and were themselves responsible for any fines or penalties for violations of state laws, for damage done to their vehicles, or for injuries to third persons. Plaintiff's name did not appear on the trucks. At all material times, plaintiff solicited shipments, both truck-load lots and less, for movement over the St. Paul, Minneapolis and Chicago routes, operations over which were conducted several times per week, and truck loads over other routes which were irregularly served, except that he would accept 5,000-pound cargoes over the latter routes.

Plaintiff estimated that he handled 20,-000,000 pounds of freight during each of the years 1935 and 1936. He instructed the driver where to get the load, where to deliver it, and, in most instances, the route to follow, and made certain the truck was in suitable condition to make the trip. He adjusted claims and carried cargo insurance, but charged the truckers 1.5 per cent. of their earnings on those shipments to cover such insurance. He made advances to truckers to cover their expenses, which were later repaid by the truckers. The shipments in many instances were covered by plaintiff's freight bills. However, at times, truck-owners moved shipments on their own billing. The plaintiff maintained a general office in the City of St. Paul and had an arrangement with a filling station operator at Chicago, Illinois, to handle such business as he might have in the State of Illinois. The arrangement at Chicago was not for the exclusive benefit of the plaintiff. The filling station operator had the privilege of either turning the business over to the plaintiff, or to such of the owner-operators hauling for the plaintiff as were permitted to accept shipments on their own account. Plaintiff advertised in telephone books and periodicals as a common carrier. In 1936 plaintiff signed written leases with many of the owner-operators. However, his relations with them were conducted in the same manner as previously. The written leases contain the following provisions: "Provided, further, that the said lessee [plaintiff] shall be under no liability or obligation whatsoever to make any improvements or repairs upon said motor vehicles, to pay for any licenses, permits, certificates or insurance necessary or convenient to the operation of the same, nor shall the said lessee be liable for any accidents or damage sustained or suffered by the said motor vehicles or third persons, whether the same be due to the negligence of lessee or otherwise."

The plaintiff had no state permits authorizing his operation in any of the states covered by the applications during the year 1935. It appears that in Illinois no permit was required for the operation of trucks during the year 1935.

Some of the owner-operators applied for authority under the "grandfather" clause. These applications were drafted in the office of the plaintiff, with his knowledge.

The plaintiff was registered under the National Industrial Recovery Act, 48 Stat. 195, and the Code of Fair Competition for the trucking industry for the State of Minnesota prior to June 1, 1935.

The Commission found that the applicant had failed to establish that he was, on the statutory date and continuously ever since, in bona fide operation in interstate or foreign commerce as a common or contract carrier by motor vehicle between any points whatsoever, and that the applications should be denied. The denials of the applications were apparently based on the grounds that the plaintiff had failed to meet the burden of proof imposed upon him with respect to his applications for authority under the "grandfather" clause; that the operations of the owner-drivers could not be used in determining plaintiff's operating rights, and that any rights which he might be entitled to necessarily rested on the operation of the Davis equipment; that there was a failure of proof to show what shipments, if any, were transported in that equipment; that if such operation of the Davis equipment could be considered bona fide, there was a substantial interruption thereof after the statutory date.

The first contention made by the plaintiff requires no discussion, since the plaintiff has failed to point out in his oral or written arguments (and we have been unable to find from a search of the record) any matter foreign to, or outside the record which has been found as a fact or suggested as a basis for any conclusion thereon by the Commission.

Although it is generally claimed by the plaintiff that the findings of the Commission are without support in the evidence, and are arbitrary, in his complaint he attacks the findings in certain instances. From a search of the record we have been unable to find any specific instance where the findings are without support in the evidence.

The plaintiff has testified that all equipment used by him on the statutory date, save the Davis equipment, was operated under lease, and he claimed to have had an equity in some four or five pieces of such equipment. The plaintiff advanced money to these truckers on occasion, taking their unsecured notes for the advances which were subsequently deducted from the earnings of the truckers, but the plaintiff never had a lien or mortgage on any of said equipment. While the plaintiff carried cargo insurance, and in the first instance paid for it, he charged the same back against the trucker and deducted the amount thereof from

the earnings of the trucker. The truckers, at their own expense, furnished public liability and property insurance, and also workmen's compensation insurance. The billing of freight was not in all instances in the name of the plaintiff. At times the truck owners moved shipments on their own billings. The plaintiff advanced money to truckers for supplies. These advances were later deducted by the plaintiff from the earnings of the trucker. The plaintiff maintained an office and had one employee in St. Paul, on the date of the hearing. He had an arrangement with a service station operator at Chicago to accept telephone calls which had to do with the Chicago business.

The Court's review of the evidence, both in cases under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., and under the Interstate Commerce Act, 49 U.S. C.A. § 1 et seq., is limited to the question of whether there is substantial evidence to support the findings of the Commission. The Court is not permitted to question the soundness of the reasoning upon which the conclusions of the Commission were reached, nor the weight of the evidence. These matters are for the consideration of the Commission. The Commission's findings will be disturbed only when they are arbitrary and without support of substantial evidence. See Ohio Bell Telephone Company v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093; Loving et al. v. United States et al., D.C.W.D.Okl., 32 F.Supp. 464, affirmed per curiam, 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387; United States, et al. v. Maher etc., 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162. Even though the evidence might support a different inference, the Court is not permitted to substitute its judgment for that of the Commission. See Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 307, 57 S.Ct. 478, 81 L.Ed. 659.

A careful examination of the record made before the Commission satisfies this Court that the findings of the Commission are founded upon substantial evidence.

The plaintiff argues that "The finding that petitioner allegedly had not leased equipment and that it had not been operated under his direction and control fails utterly and completely to sustain the Commission's conclusion that for such reason petitioner was not a common carrier in that the statute imposes no such conditions", and that the Commission erred as a matter of law in its construction of the Motor Carrier Act in denying petitioner's claim for "grandfather" certificates.

The plaintiff invokes the "grandfather" clause as the basis for his right to certificates. To entitle him to a certificate under that clause he must show that he "was in bona fide operation as a common carrier by motor vehicle on June 1, 1935" and continuously thereafter. In determining whether or not plaintiff is entitled to certificates under the "grandfather" clause, Section 203, subdivision (a) (14), 49 U.S.C. A. § 303(a)(14), must be read in connection with Section 206(a) of the Act.

Section 203(a)(14) defines a common carrier by motor vehicle under the Motor Carrier Act as "any person who or which undertakes, whether directly or by a lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public in interstate or foreign commerce by motor vehicle for compensation, * * *."

This section was amended in the Transportation Act of 1940. The words "by lease or any other arrangement" were omitted in the new Act. 49 U.S.C.A. § 303(a)(14).

The provision of Section 206(a) that no "common carrier by motor vehicle * * * shall engage in any interstate * * * operation on any public highway" without a certificate "indicates that indirect operations of forwarders through independent carriers are not within the scope of the Act". Acme Fast Freight, Inc. et al. v. United States et al., D.C.S.D.N.Y., 30 F.Supp. 968, affirmed per curiam, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993.

In ascertaining the rights of an applicant under the "grandfather" clause, many elements must be considered. The bona fides of the operation, the regularity and extent of the operation, the equipment in use, whether owned or leased, the applicant's control or lack of control over the operators and equipment, the relationship existing between applicant and operator, the lawfulness of the operations in the different states, and the applicant's responsibility to the public and shipper, are all matters which should be inquired into and appraised.

In the instant case we are dealing with the question of whether the plaintiff qualified under the statutory definition in the Motor Carrier Act of a common carrier, and not with questions arising from the relationship of master and servant, or

principal and agent. It may be said that the plaintiff held himself out on the statutory date as a common carrier by motor vehicle, but the question remains, did he perform the transportation. To qualify as a common carrier by motor vehicle, he must actually have performed the carriage, either by equipment of his own, or such as he had under lease. He must have had control, in either event, of the equipment. Loving et al. v. United States et al., supra. His operation must have been bona fide, and in compliance with the laws of the states through which his equipment passed. McDonald v. Thompson et al., 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164. There must have been responsibility to the public and the shipper without avoidance thereof.

 This Court expressed itself in O'Malley v. United States et al., 38 F.Supp. 1, 3, in respect to the tests applied by the Commission to "grandfather" applications, as follows: "The Commission appears to have consistently ruled that to be a carrier by motor vehicle one must have direction and control of the motor vehicles which do the carrying for him, so that he is responsible both to the shipper and to the general public for their operation; or, in other words, that with respect to the motor vehicles which he uses he must stand in the relation of proprietor by virtue of ownership, lease, or other arrangement, and that mere user, in the absence of control or direction, even though exclusive, is not enough." (Citing cases).

The construction which the Commission has placed upon the words "by * * * any other arrangement" in Section 203(a)(14) of the Act has met with the approval of the Court. See Acme Fast Freight, Inc., et al. v. United States et al., supra.

The purpose of the Motor Carrier Act is regulatory. The intention of the Congress in inserting the "grandfather" clause in the Act was, no doubt, for the benefit of carriers who had been in bona fide operation previous to and on the statutory date, and continuously thereafter, up and to the time of hearing on the application for authority. To obtain authority to operate under that clause, the Act requires that the applicant establish the fact that he was in bona fide operation at the material times. The Commission has said by its orders that the plaintiff failed to meet the requirements of proof, and with this conclusion we do not disagree.

As to the plaintiff's operation of the Davis equipment, there is evidence that the same was not operated by the plaintiff for a period of two months prior to the time of the hearing. No explanation of the discontinuance of the operation of that equipment was given. No "grandfather" claim can be based on that type of operation. See United States et al. v. Maher, etc., supra.

It is our conclusion that the findings of the Commission are supported by substantial evidence, that there is no evidence of arbitrary action, and that there has not been an improper construction of the Motor Carrier Act. The bill of complaint will be dismissed.