346 F.2d 836
 Raymond WARRENNER, t/a Blue Line Sightseeing Company, Petitioner,
v.
WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent,
D. C. Transit System, Inc., Washington, Virginia & Maryland Coach Company, Inc., Alexandria, Barcroft and Washington Transit Company, The Gray Line, Inc., Intervenors.
 No. 18991.
 United States Court of Appeals District of Columbia Circuit.
 Argued February 19, 1965.
 Decided May 13, 1965.
 
 Mr. Warren Woods, Washington, D. C., with whom Mr. David C. Venable, Washington, D. C., was on the brief, for petitioner. Mr. Edward G. Villalon, Washington, D. C., also entered an appearance for petitioner.
 Mr. Russell W. Cunningham, Arlington, Va., for respondent.
 Mr. Harold Smith, with whom Mr. John R. Sims, Jr., Washington, D. C., was on the brief for intervenor D. C. Transit System, Inc., argued for all intervenors.
 Mr. S. Harrison Kahn, Washington, D. C., was on the brief for intervenors Alexandria, Barcroft and Washington Transit Co. and The Gray Line, Inc.
 Mr. Manuel J. Davis, Washington, D. C., was on the brief for intervenor Washington, Virginia and Maryland Coach Co., Inc.
 Before WASHINGTON, WRIGHT and McGOWAN, Circuit Judges.
 McGOWAN, Circuit Judge:
 
 
 1
 The review jurisdiction of this court under the Washington Metropolitan Area Transit Regulation Compact is invoked with respect to two orders of the Commission created thereunder. One such order (No. 384) denied the application of the petitioner, Raymond Warrenner, doing business as the Blue Line Sightseeing Company, for authority to engage in sightseeing motor bus operations between the District of Columbia and points in Northern Virginia. The other order (No. 403) denied reconsideration of that action. There is no issue before us as to whether petitioner's operations are justified by reference to the public convenience and necessity. The only issue is as to petitioner's claim that he had grandfather rights within the purview of the Compact.[1] We find the Commission's rejection of that claim to have been founded upon legal error and contrary to the evidence of record.
 
 
 2
 * For a long period of time prior to 1957, petitioner had conducted sightseeing operations in the District of Columbia, and between it and the neighboring states of Virginia and Maryland. In that year he sought formal authority from the Interstate Commerce Commission for the latter operations. That authority was denied (77 M.C.C. 213 (1958)) because of the apparent lack of requisite state authority. Petitioner did not press the matter as to Maryland, but did seek and procure authority from the Virginia Corporation Commission covering regular route, round-trip only, sightseeing operations between Virginia points which included the Virginia side of the 14th Street Bridge. Petitioner was of the view that this authority, when taken in conjunction with his authority for charter and special operations within the District of Columbia, qualified him within the so-called commercial zone exemption contained in Section 203(b) (8) of the Interstate Commerce Act, Part II,[2] and he continued to operate openly, and without complaint from any quarter to the ICC or the Virginia Commission, in the provision of service between the District and Virginia. Some possible doubt as to the validity of petitioner's assumption in this regard was created by an ICC decision in 1960, which held that the exemption applied only where the carrier was engaged in "corresponding" operations on each side of the interstate dividing line. A. B. & W. Transit Co. v. D. C. Transit Sys., Inc., 83 M.C.C. 547 (1960). But no claim was forthcoming from any source, public or private, that petitioner was operating illegally.
 
 
 3
 The grandfather date fixed in the Compact was March 22, 1961. Petitioner's timely application for grandfather rights was filed June 20, 1961. Protests were filed by the intervenors, who were carriers authorized to engage in operations between the District and Virginia. At the ensuing hearing, evidence was offered by petitioner in support of his application, but the only evidence offered in opposition was a transcript of petitioner's 1958 hearing before the Virginia Commission. The intervenors argued that, as a matter of law, petitioner's interstate operations were illegal because beyond the scope of the commercial zone exemption, inasmuch as petitioner's charter and irregular route authority in the District did not "correspond" to its regular route authority in Virginia. The intervenors concluded that, if these operations were illegal because not exempt, then petitioner could not, within the meaning of the Compact, have been engaged in bona fide operations on the grandfather date.
 
 
 4
 The Commission did not agree. On March 9, 1964, it issued its Order No. 342, granting petitioner certain authority to serve on an interstate basis. It reasoned as follows:
 
 
 5
 The Commission is of the opinion that it need not determine whether the two intrastate operations were "corresponding" and/or whether they could be tacked together to qualify under the Interstate Commerce Act's commercial zone exemption. Even if Warrenner's position is wrong legally, and we are not prepared to say that it is, we are of the opinion that Warrenner began the operation in good faith under "color" of authority; that his movements were open and undisguised and the transportation was rendered in his own vehicles, clearly painted, marked, and identified as belonging to him, and therefore that he was bona fide engaged in the transportation hereinafter authorized on March 22, 1961.
 
 
 6
 Upon reconsideration, however, and after further oral argument, albeit without the taking of additional evidence, the Commission changed its mind. On September 11, 1964, it issued the first of the two orders under review, denying any interstate authority. It ruled that the petitioner's District of Columbia and Virginia authorities, because of their dissimilarities, did not come within the commercial zone exemption of the Interstate Commerce Act and were, accordingly, incapable of rendering petitioner's operations legal. Citing our decision in Montgomery Charter Serv., Inc. v. Washington Metropolitan Area Transit Comm'n, 117 U.S.App.D.C. 34, 325 F.2d 230 (1963), the Commission surmised the binding law of this Circuit to be that an illegal operation can never be bona fide within the meaning of the grandfather clause in the Compact.
 
 II
 
 7
 In the view we take of the case, there is no occasion to construe Section 203(b) (8) of the Interstate Commerce Act and to decide whether petitioner was or was not within the commercial zone exemption. That is a task most appropriately to be performed in the first instance by the ICC, the agency to whom Congress has committed the administration and enforcement of that statute. We note only that the Commission conceded before us the substantiality of the legal question presented as to the relationship of Section 203(b) (8) to petitioner's operations; and we think the Commission's first instinct in this regard was the right one, namely, to put aside an express determination by it of that question. We think, further, that the Commission's reading of our opinion in Montgomery Charter Service is misconceived.[3] Where there is no question as to the legal authority for certain regulated operations, there is little, if any, room for the claim that they are not bona fide. But the converse by no means obtains. Indeed, it is not an unfamiliar principle in the law of grandfather rights that an operation, although perhaps lacking in formal legal authority, may still be fully characterized by the good faith which is the legislative preoccupation in the typical grandfather statute. Alton R. R. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L. Ed. 586 (1942); and see Hillier Storage Co., 42 M.C.C. 185 (1943); Jackson-Strickland Transp. Co., 42 M.C.C. 133 (1943); Earl W. Slagle, 2 M.C.C. 127 (1937). Of course it is true that one who operates in clear and calculated defiance of applicable regulatory laws may have great difficulty in establishing his bona fides for purposes of a grandfather clause. McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 174 (1938). But, as the Supreme Court made clear in Alton, the good faith issue in a grandfather context is not a matter of legal technicalities, but is primarily "a question of fact for the Commission to determine." And that inquiry focuses upon such things as the absence of evasiveness and of deliberate and knowing disregard of the requirements of the law. In its first decision to grant petitioner's application, the Commission found from the evidence that, by reference to these considerations, the petitioner "was bona fide engaged in the transportation hereinafter authorized on March 22, 1961." No legal principle was laid down in our Montgomery Charter Service decision which either required, or justified, the Commission's retreat from this finding. And, of course, no further evidence had been added to the record on which this finding had been made.
 
 
 8
 The orders under review are set aside, and the case is remanded to the Commission to consider the reinstatement of its Order No. 342 in the light of the foregoing.
 
 
 9
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 Section 4(a) of the Compact, 74 Stat. 1031 (1960), is as follows:
 No person shall engage in transportation subject to this Act unless there is in force a certificate of public convenience and necessity issued by the Commission authorizing such person to engage in such transportation; provided, however, that if any person was bona fide engaged in transportation subject to this Act on the effective date of this Act, the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission within 90 days after the effective date of this Act. Pending the determination of any such application, the continuance of such operation shall be lawful.
 
 
 [2]
 
 
 
 [49]
 Stat. 544 (1935), as amended, 49 U.S.C. 303(b):
 [N]or * * * shall the provisions of this chapter * * * apply to: (8) The transportation of passengers or property in interstate or foreign commerce wholly within a municipality or between contiguous municipalities or within a zone adjacent to and commercially a part of any such municipality or municipalities, except when such transportation is under a common control, management, or arrangement for a continuous carriage or shipment to or from a point without such municipality, municipalities, or zone, and provided that the motor carrier engaged in such transportation of passengers over regular or irregular route or routes in interstate commerce is also lawfully engaged in the intrastate transportation of passengers over the entire length of such interstate route or routes in accordance with the laws of each State having jurisdiction; * * *.
 
 
 [3]
 This case was not decided in the interval between the Commission's conflicting dispositions of petitioner's application. Issued November 25, 1963, it antedated both by several months; and it is difficult to perceive why its allegedly conclusive effect was not equally apparent at the earlier time. In any event, that case has very little relation to this. This court in effect directed the Commission to carry out a commitment it had made, in conjunction with a pending change in the law, to issue a grandfather certificate pursuant to that change to one described as "legally and in good faith" engaged in certain operations on the critical date. The Commission, in its second look at petitioner's application, has seized upon this reference as a binding interpretation by this court of the Compact to the effect that good faith alone will never suffice to support grandfather rights. The court's language is, of course, to be read in the context of the facts before it. So read, it hardly warrants the Commission's projection of it into an interpretation of the statute decisive of all other cases