**HOLIDAY TOURS, INC. and Walter L. Davis, Appellants,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**Nos. 4257–4259.**

District of Columbia Court of Appeals.

Argued July 24, 1967.

.   Decided Oct. 18, 1967.

J. William Cain, Jr., Washington, D. C., with whom Leonard A. Jaskiewicz, Washington, D. C., was on the brief, for appellants.

Richard W. Barton, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

This appeal is from a conviction on 6 counts of knowingly and wilfully, as a carrier, engaging in the transportation for hire of persons by motor vehicle in the District of Columbia and the Washington Metropolitan Area Transit District without first having obtained a certificate of public convenience and necessity issued by the Washington Metropolitan Area Transit Commission (hereinafter referred to as the Commission). Title II, Article XII, § 4(a) of the Washington Metropolitan Area Transit Regulation Compact, Pub.L. 86–794, 74 Stat. 1031, 1037 (1960).[1] We affirm.

For some years appellants have been engaged in the business of providing sightseeing tours in and around Washington, D. C. In 1961 appellant Holiday Tours, Inc. made application to the Commission for a certificate of public convenience and necessity to operate as a sightseeing carrier in buses, based upon "grandfather" rights under § 4(a) of the Compact. The application was denied but on appeal the case was remanded to the Commission for further proceedings. Holiday Tours, Inc. v. Washington Metropolitan Area Transit Comm'n, 122 U.S.App. D.C. 196, 352 F.2d 672 (1965). Thereafter the application was considered de novo and again denied, the Commission ruling that Holiday Tours, Inc. was operating a sightseeing bus by limousine and not transportation by bus within the terms of the grandfather clause of the Compact. This ruling was affirmed on appeal, Holiday Tours, Inc. v. Washington Metropolitan Area Transit Comm'n, 125 U.S.App.D.C. 336, 372 F.2d 401 (1967), the court concluding its opinion by stating:[2]

> proof that public convenience and necessity will be served by such operation, and without further proceedings, if application for such certificate is made to the Commission within 90 days after the effective date of this Act. Pending the determination of any such application, the continuance of such operation shall be lawful.

1. 4(a) No person shall engage in transportation subject to this Act unless there is in force a certificate of public convenience and necessity issued by the Commission authorizing such person to engage in such transportation; provided, however, that if any person was bona fide engaged in transportation subject to this Act on the effective date of this Act, the Commission shall issue such certificate without requiring further

2. 125 U.S.App.D.C. at 337, 372 F.2d at 402.

Finally, we note that the Commission concedes that appellant may continue to operate in the future a sightseeing business by limousine, *as well as with buses and drivers supplied by licensed bus operators.* (Emphasis supplied)

The present criminal charges arose during the continued operation of appellants' sightseeing business pending the latter appeal. At trial it was stipulated that appellants did not have a certificate of public convenience and necessity issued by the Commission and that on each of the dates alleged in the information [3] appellants operated sightseeing buses in the District of Columbia. The issues were further narrowed by the Government's concession that appellants could not be found guilty of the charges if it were shown that on the dates in question the buses used for sightseeing had been obtained through a bona fide charter arrangement from a company or companies authorized by law to charter buses. Accordingly, as to the alleged violation of July 25, it was agreed that the only question before the court was whether the operation was pursuant to a charter or a lease.[4] The question as to the remaining counts was whether the arrangements made by appellants were bona fide charter arrangements or whether they were mere subterfuges to evade the provisions of the statute.

■ Passengers for appellants' sightseeing tours are booked through various hotels, motels, and rooming houses. Each evening the number of passengers booked for the following day is totaled and if the number of passengers exceeds the capacity of appellants' limousines, arrangements are made for their transportation by buses which, under the law, must be chartered from licensed carriers operating in the area.

The testimony revealed that the bus used on July 25 was obtained from Atwood Transport Lines, Inc., a licensed carrier. Appellant Davis testified that the bus was chartered from Atwood, and a customer's invoice for charterbus service was introduced to evidence this fact. On the other hand, Robert C. Buchanan, President of Atwood, testified that the bus was leased to appellants and that the fee paid was on the basis of a lease and not a charter. This conflicting evidence presented a question of fact for determination by the trial judge who found the arrangement to be a lease rather than a charter. Since there was substantial evidence to support this finding it will not be disturbed on appeal.

■ On each evening prior to the dates of operation set forth in the remaining counts of the information appellants leased one of their own buses, by telephone, to Baltimore-Solomons Bus Lines, Inc., also a licensed carrier. Without taking physical possession of the bus, Baltimore-Solomons chartered it back to appellants for the time necessary to conduct sightseeing tours on the following day. Charter coach orders for some of the days in dispute were introduced to evidence this fact. There was testimony, however, that appellants maintained the bus in question, that they furnished their own driver, and that the bus was prominently marked on the sides and in the rear with the legend "Holiday Tours". There was some dispute as to whether Baltimore-Solomons' name and I.C.C. number were also displayed on the sides. Appellant Davis testified that the arrangement was a bona fide charter, but Thomas Parran, Jr., President of Baltimore-Solomons, described it as "legal subterfuge". Again, a question of fact was presented for determination by the trial judge who found the arrangement to be a subterfuge rather than a bona fide

---

3. July 1, 5, 8, 14, 25, 26, 27 and 28, 1966. Appellants were found not guilty of an alleged violation of July 26 and do not appeal the conviction of that of July 14.

4. The distinction lies in which company is the carrier. In a charter, Holiday Tours needs no certificate of convenience and necessity since it is not the carrier. In a lease, such certificate (which Holiday Tours does not have) is required.

charter. Again, the finding was supported by ample evidence and will not be disturbed on appeal.

Appellants profess an inability to understand how, by continuing to engage in conduct specifically sanctioned by the Commission and by the court in Holiday Tours, Inc. v. Washington Metropolitan Area Transit Comm'n, supra,[5] they stand convicted of criminal charges. They insist that since Atwood was found to be the carrier in the civil litigation there must, of necessity, be a like result in the criminal proceedings. The fact is, however, that on all counts the trial judge found that their conduct deviated in significant respects from that sanctioned by the appellate court. We find no error.

Affirmed.

---

5. The operation of a sightseeing business "with buses and drivers supplied by licensed bus operators."